**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

UNITED STATES OF AMERICA,
       *Plaintiff-Appellee,*

v.

VERNON LEE BAD MARRIAGE, JR.,
       *Defendant-Appellant.*

No. 05-30149

D.C. No.
CR-03-00029-SEH

OPINION

Appeal from the United States District Court
for the District of Montana
Sam E. Haddon, District Judge, Presiding

Argued and Submitted
December 6, 2005—Seattle, Washington

Filed February 22, 2006

Before: Ronald M. Gould and Marsha S. Berzon,
Circuit Judges, and William W Schwarzer,*
Senior District Judge.

Opinion by Judge Schwarzer;
Dissent by Judge Berzon

---

*The Honorable William W Schwarzer, Senior United States District
Judge for the Northern District of California, sitting by designation.

**COUNSEL**

David F. Ness, Assistant Federal Defender, Federal Defenders of Montana, Great Falls, Montana, for the defendant-appellant.

Joseph E. Thaggard, Assistant U. S. Attorney, U.S. Attorney's Office, Great Falls, Montana, for the plaintiff-appellee.

**OPINION**

SCHWARZER, Senior District Judge:

Vernon Lee Bad Marriage, Jr., (Bad Marriage) appeals his sentence imposed following his guilty plea to a charge of assault resulting in serious bodily injury in violation of 18 U.S.C. §§ 113(a)(6) and 1153. Finding no error, we affirm.

## FACTUAL AND PROCEDURAL HISTORY

Bad Marriage was indicted in March 2003 on a charge of aggravated sexual assault in violation of 18 U.S.C. §§ 2241(a)(1) and 1153. Following a plea agreement, he was charged in a superseding information with assault resulting in serious bodily injury. He pled guilty to that charge.

The incident giving rise to the charge occurred on January 30, 2003. Bad Marriage was released from tribal jail to attend an Alcoholics Anonymous meeting. Instead, he went to the home of Leeta Old Chief, his girlfriend. After having consensual sex, they drove to visit friends. There an argument ensued between the couple and Bad Marriage began hitting Old Chief. The couple then drove to the rodeo grounds where Bad Marriage severely kicked and beat Old Chief. Bad Marriage and Old Chief then had anal sex. Old Chief initially told FBI agents that she had been raped but later retracted this claim. Once Old Chief told law enforcement officers that she would no longer be willing to testify that Bad Marriage had raped her, the government dismissed the indictment in exchange for Bad Marriage's guilty plea to the information charging assault resulting in serious bodily injury.

The district court sentenced Bad Marriage under the then-binding Sentencing Guidelines. The court ruled, based on U.S.S.G. § 4A1.3 (policy statement), that the criminal history level III under-represented both the seriousness of Bad Marriage's past criminal conduct and the likelihood that he would commit future crimes. It sentenced Bad Marriage to forty-one months in prison, the high end of the sentencing range determined under the Guidelines with his offense score and adjusted criminal history level. Bad Marriage appealed the sentence, contending that his criminal history did not consist of serious offenses warranting a departure under U.S.S.G. § 4A1.3. This court reversed and remanded for resentencing, holding that "an upward departure pursuant to § 4A1.3 was

not justified by the facts." *United States v. Bad Marriage*, 392 F.3d 1103, 1115 (9th Cir. 2004) (*Bad Marriage I*).

In imposing sentence on remand, the district court provided a lengthy statement of reasons, starting with an analysis of the Ninth Circuit decision. It read that decision as resting on the fundamental premise that the Sentencing Guidelines were binding on the court. *United States v. Booker*, however, changed that, establishing that application of the Guidelines could not be mandatory. 125 S. Ct. 738, 756-57 (2005). Under *Booker*, the court is required to take into account the Guidelines as well as the sentencing considerations contained in 18 U.S.C. § 3553(a). The court then enumerated the factors it considered in arriving at the sentence in addition to the advisory Guidelines calculation, including the defendant's extensive criminal record, the absence of assurance that the defendant will not offend again given the opportunity, the defendant's capacity to commit brutal and degrading acts of violence, and the substantial blunt force injury inflicted by the defendant's kicking the victim with heavy hiking boots. In sum, the court concluded, the defendant is an extremely dangerous person capable of inflicting severe harm on vulnerable and defenseless persons, calling for a sentence that recognizes the brutality of the assault and the need to protect the public in the future. The court then sentenced Bad Marriage to forty-eight months in prison. This timely appeal followed.

## DISCUSSION

## I.   THE MANDATE AND LAW OF THE CASE

### A.   *Law of the Case*

[1] Bad Marriage's principal contention is that the district court failed to comply with this court's mandate. That mandate was to resentence Bad Marriage "within the appropriate range." *Bad Marriage I*, 392 F.3d at 1115. Bad Marriage reads the mandate as requiring imposition of a sentence based

on offense level sixteen and criminal history category III resulting in a range of twenty-seven to thirty-three months. We disagree.

The court's opinion does not elucidate "the appropriate range." Its resentencing mandate was based on its determination that the upward adjustment of Bad Marriage's criminal history was not justified. *Id.* at 1111-13. Its decision rested on its interpretation of U.S.S.G. § 4A1.3, "Departures Based on Inadequacy of Criminal History Category (Policy Statement)," and that section's application to the facts of the case.[1] Although there is a degree of overlap between the factors bearing on criminal history and those relevant under § 3553, the court did not decide whether other factors relevant to the Guidelines calculation could have justified an upward departure. *See*, *e.g.*, U.S.S.G. § 5K2.8 Extreme Conduct (Policy Statement) (2003) (court may increase the sentence above the Guidelines range for "conduct unusually . . . brutal or degrading to the victim").

**[2]** On remand, the district court looked to the Guidelines as advisory but made no reference to Bad Marriage's criminal history category. When defense counsel, in the course of his argument, asked the court to apply category III in its Guidelines calculation, the court did not respond, neither rejecting

---

[1]In beginning its analysis, the court referred to Bad Marriage's contention "that his criminal history, while extensive, does not consist of serious offenses warranting departure under U.S.S.G. § 4A1.3." *Bad Marriage I*, 392 F.3d at 1107. The court's opinion then proceeded to discuss "Ninth Circuit Law on § 4A1.3 Departures." *Id.* at 1108. It concluded by "hold[-ing] that the seriousness of a defendant's prior convictions must be a significant factor in a decision to depart under either prong of § 4A1.3." *Id.* at 1110. It next discussed the "Recidivism Prong" and concluded "that an upward departure based on the [recidivism] prong of § 4A1.3 was not justified." *Id.* at 1113. Finally, the court discussed "Substance Abuse" and concluded that "the length and character of Bad Marriage's criminal record is clearly the result of a serious drinking problem. To sentence Bad Marriage to a longer term on the basis of that record would serve no useful purpose." *Id.* at 1114.

nor granting this request. The district court's stated reasons for imposing its sentence were, in substance, to punish the defendant for committing a brutal assault on a defenseless person and to protect the public from similar conduct in the future. Although the court, free of the constraint of the Guidelines, imposed a more severe sentence on remand, we find nothing in the record to suggest that the sentence contravened the mandate.

### B.  The Effect of Booker

[3] Even if we were to read *Bad Marriage I* to hold that on the facts no upward departure from the Guidelines range is justified, the law of the case doctrine does not bar the sentence. "Under the 'law of the case' doctrine, a court is ordinarily precluded from reexamining an issue previously decided by the same court, or a higher court, in the same case." *Minidoka Irrigation Dist. v. Dep't of Interior*, 406 F.3d 567, 573 (9th Cir. 2005) (quoting *Old Person v. Brown*, 312 F.3d 1036, 1039 (9th Cir. 2002)). The doctrine is subject to three exceptions, only one of which is relevant here, to wit, where intervening controlling authority makes reconsideration appropriate. *Id.*

[4] The opinion in *Bad Marriage I* was issued on December 30, 2004. On January 12, 2005, the Supreme Court decided *Booker*, 125 S. Ct. 738. The *Booker* decision fundamentally changed the sentencing regime under which *Bad Marriage I* was decided, making the Guidelines advisory rather than mandatory. 125 S. Ct. at 756-57 (district courts must consult the Guidelines but are not bound by them).[2] If *Bad Marriage I* is read to establish the law of the case under a mandatory Sentencing Guidelines regime, *Booker*, which leaves Guide-

---

[2]Contrary to Bad Marriage's assertion, the district court was free to consider the *Booker* issue sua sponte. *United States v. Cortez-Arias*, 425 F.3d 547, 548 (9th Cir. 2005)

lines as advisory only, is intervening controlling authority displacing prior law of case.[3]

## II.  OTHER CONTENTIONS ON APPEAL

Bad Marriage's other contentions may be readily disposed of.

He contends first that the retroactive application of *Booker* to increase his sentence for a pre-*Booker* offense violates the Ex Post Facto clause of the Constitution. We squarely rejected this claim in *United States v. Dupas*, 419 F.3d 916 (9th Cir. 2005), for three reasons: the *Booker* opinion specifically makes the advisory Guidelines regime applicable to pending cases; retroactive sentence enhancements, as opposed to retroactive increases in the scope of criminal liability, do not offend the ex post facto prohibition; and although application of *Booker* could result in an increased sentence, the statutory maximum penalty gave sufficient notice to satisfy due process. *Id.* at 920-21.

**[5]** Next, Bad Marriage contends that the sentence was unreasonable. He relies on the court's statement in *Bad Marriage I* that it found "nothing in the record to suggest that the standard range set by the Sentencing Guidelines would be an inadequate deterrent." *Id.* at 1113. That statement is not helpful to Bad Marriage. It referred to the calculation of the appropriate criminal history category. As previously discussed, *Bad Marriage I* decided that an upward adjustment of the criminal history category was not justified; it did not decide the appropriate sentencing range. The district court followed the proper

---

[3]Several decisions have reached the same conclusion. *See*, *e.g.*, *United States v. Puche*, No. 05-10033, 2005 WL 3113463, at *4 (11th Cir. Nov. 22, 2005) (unpublished); *United States v. Butler*, 139 F. App'x 510, 512 (4th Cir. 2005) (unpublished). *See also United States v. Lang*, 405 F.3d 1060, 1064 (10th Cir. 2005) (published) (stating that the *Blakely* decision might constitute an exceptional circumstance for purposes of the mandate rule).

procedure in arriving at its sentence, taking into account the Guidelines and considering the § 3553 factors, in particular "the seriousness of the offense," § 3553(a)(2)(A) (noting the brutality of the assault on a defenseless person), and the need "to protect the public from further crimes of the defendant." § 3553(a)(2)(C). While we recognize that the sentence is above the advisory Guidelines range, that alone, without a factual showing, is insufficient to make it unreasonable.

**[6]** Finally, Bad Marriage contends that the imposition of the longer sentence following his successful appeal raises a presumption of vindictiveness. He argues that the presumption applies here because the district court in increasing the sentence did not rely on any new or additional evidence. But the presumption applies only when "there is a 'reasonable likelihood' that the increase in sentence is the product of actual vindictiveness on the part of the sentencing authority." *Alabama v. Smith*, 490 U.S. 794, 799 (1989) (internal citation omitted). It is overcome when "the reasons for [imposition of a more severe sentence] affirmatively appear." *Id.* at 798 (quoting *North Carolina v. Pearce*, 395 U.S. 711, 726 (1969)). Those reasons affirmatively appear here. When the district court imposed the original sentence, it was constrained by the mandatory Guidelines. At resentencing, as the court explained, that constraint had been removed freeing it to use its discretion to impose a sentence it deemed appropriate. Its reasons for the particular sentence are fully explained on the record. We conclude that the change in circumstances together with the court's explanation for its sentence suffice to remove any taint of vindictiveness.

## CONCLUSION

For the reasons stated, the judgment and sentence are AFFIRMED.

BERZON, Circuit Judge, dissenting:

In my view, the district court did not accord the prior panel's opinion in *United States v. Bad Marriage*, 392 F.3d 1103 (9th Cir. 2004) (*Bad Marriage I*), the respect it is due. Instead, the district court ignored *Bad Marriage I*'s legal rulings and analysis of the record, which it was not entitled to do. The majority approves of the district court's maneuver, perhaps sharing the district court's discomfort with the analysis and holding of *Bad Marriage I*. Whether or not that discomfort is understandable, we cannot run an orderly justice system if such end-runs around appellate decisions in the same case are permitted. I therefore respectfully dissent.

In *Bad Marriage I*, we held that an upward departure pursuant to section 4A1.3 of the United States Sentencing Guidelines was not warranted by the facts, and struck down Vernon Lee Bad Marriage's forty-one month sentence. *See id.* at 1115. We reasoned, in part, that Bad Marriage's criminal history did not warrant such a long sentence and that a sentence of that length would not serve the goals of rehabilitating Bad Marriage and protecting the public. *See id.* at 1114-15. On remand, the district court correctly observed that after *United States v. Booker*, 125 S. Ct. 738 (2005), the Guidelines were advisory rather than mandatory. It then imposed a *longer* sentence than it had previously, justifying the length of the sentence with reference to, inter alia, Bad Marriage's extensive criminal history and the need to protect the public. In so doing, the district court completely disregarded our determinations in *Bad Marriage I* regarding the weight that should be attached to Bad Marriage's criminal history and the potential efficacy of a long sentence, given Bad Marriage's alcoholism. I would hold that the district court abused its discretion because it disregarded those determinations.

# I.

Under the law of the case doctrine, a decision by this court must generally be followed in all subsequent proceedings in

the same case. *See Lindy Pen Co., Inc. v. Bic Pen Corp.*, 982 F.2d 1400, 1404 (9th Cir. 1993). For the doctrine to apply to a particular issue, that issue must have been "decided explicitly or by necessary implication in [the] previous disposition." *Liberty Mut. Ins. Co. v. EEOC*, 691 F.2d 438, 441 (9th Cir. 1982). This general rule — that decisions of this court must be followed in subsequent proceedings — is subject to several exceptions. As pertinent here, the law of the case need not be followed when "intervening controlling authority makes reconsideration appropriate." *Old Person v. Brown*, 312 F.3d 1036, 1039 (9th Cir. 2002); *see also id.* (listing two other exceptions: (1) "the decision is clearly erroneous and its enforcement would work a manifest injustice," and (2) "substantially different evidence was adduced at a subsequent trial" (internal quotation marks omitted)); *United States v. Lummi Indian Tribe*, 235 F.3d 443, 452-53 (9th Cir. 2000) (listing four other exceptions: (1) "the first decision was clearly erroneous," (2) "the evidence on remand was substantially different," (3) "other changed circumstances exist," or (4) "a manifest injustice would otherwise result"). We review a district court's failure to apply the doctrine of the law of the case for abuse of discretion. *See United States v. Alexander*, 106 F.3d 874, 876 (9th Cir. 1997).

Related to the law of the case doctrine is the "rule of mandate," which states that a lower court may decide any issue not foreclosed by this court's mandate. *See Herrington v. County of Sonoma*, 12 F.3d 901, 904 (9th Cir. 1993). This court may, however, "limit[ ] the scope of the issues for which we remand." *United States v. Matthews*, 278 F.3d 880, 889 (9th Cir. 2002) (en banc). When we clearly indicate our intention to do so, the district court ordinarily lacks authority to consider any issues not within the scope of the remand. *See United States v. Pimentel*, 34 F.3d 799, 800 (9th Cir. 1994) (per curiam).

We have stated that "[t]he rule of mandate is similar to, but broader than, the law of the case doctrine" and that "[a] dis-

trict court, upon receiving the mandate of an appellate court cannot vary it or examine it for any other purpose than execution." *United States v. Cote*, 51 F.3d 178, 181 (9th Cir. 1995) (internal quotation marks omitted). We have not had occasion to address the extent to which the exceptions in the law of the case doctrine also apply to the mandate rule. Nor does the majority opinion examine whether the analysis is different under the two doctrines. *See* majority op. at 1906-1907.

I believe that the analysis probably is different under the two doctrines, as each serves a different function. Both doctrines serve an interest in consistency, finality and efficiency. *See Bean v. Calderon*, 163 F.3d 1073, 1078 (9th Cir. 1998); *Milgard Tempering, Inc. v. Selas Corp.*, 902 F.2d 703, 715 (9th Cir. 1990). The mandate rule, however, also serves an interest in preserving the hierarchical structure of the court system. *See Mirchandani v. United States*, 836 F.2d 1223, 1225 (9th Cir. 1988). For that reason, I would think that exceptions to the law of the case doctrine such as manifest injustice, *see Old Person*, 312 F.3d at 1039; *Lummi Indian Tribe*, 235 F.3d at 453, do not apply to the mandate rule, and that the change in law doctrine applies only to the limited extent that the mandate need not be followed when it *requires* a district court to do something that is illegal in light of intervening controlling authority. In such a case, the interest in preserving our hierarchical structure must give way to the interest in assuring that courts do not act unlawfully.

## II.

*Bad Marriage I* "remand[ed] to the District Court for resentencing within the appropriate range." *Bad Marriage I*, 392 F.3d at 1115. Had the district court resentenced Bad Marriage prior to the Supreme Court's decision in *Booker*, the district court would have been required to sentence Bad Marriage to a term "within the appropriate range" — i.e., between twenty-seven and thirty-three months.[1] *Id.*; *see also id.* at 1113 (not-

---

[1]*United States v. Washington*, 172 F.3d 1116 (9th Cir. 1999) (*Washington II*), is not to the contrary. In *United States v. Washington*, 66 F.3d

ing that "the Sentencing Guidelines set a range of 27 to 33 months for a defendant with Bad Marriage's offense and criminal history level"). The district court so recognized, stating that if it were resentencing Bad Marriage under the pre-*Booker* regime, "the guideline range that would be mandatory to be applied would be the 27 to 33 months."

*Bad Marriage I*'s mandate requiring the district court to issue a sentence within a particular range was, however, based on the assumption that the Guidelines were mandatory, an assumption no longer valid post-*Booker*. Had the district court followed the mandate, the sentence would have been illegal, because it would have been imposed pursuant to a mandatory Guidelines regime. I therefore agree with the majority that post-*Booker*, the district court did not need to follow this particular directive in *Bad Marriage I*.

## III.

I disagree with the majority, however, that our inquiry ends there. *Bad Marriage I* established more than the simple proposition that Bad Marriage should have been sentenced to twenty-seven to thirty-three months under a mandatory Guidelines regime. In addition, as relevant here, *Bad Marriage I* established that "[t]o sentence Bad Marriage to a longer prison term on the basis of [Bad Marriage's] record would serve no useful purpose." 392 F.3d at 1114.

---

1101 (9th Cir. 1995) (*Washington I*), we had "remand[ed] for the limited purpose of recalculating [the defendant's] base offense level under section 2J1.2, without applying the cross-reference to section 2X1.3, and resentencing him accordingly." *Id.* at 1105. In *Washington II*, we held that because "[t]he mandate [in *Washington I*] did not . . . proscribe a departure," the district court did not err by departing. *Washington II*, 172 F.3d at 1119. Here, however, the mandate expressly required the district court to "resentenc[e] within the appropriate range," *Bad Marriage I*, 392 F.3d at 1115, not just to recalculate a base offense and resentence "accordingly." The much more limited mandate in this case is not covered by the holding in *Washington II*.

The *Bad Marriage I* court based its conclusion on two grounds. First, the court observed that "[t]he underlying purposes of sentencing include not only punishment and deterrence, but also the provision of treatment to a defendant in need of it." *Id.* (citing 18 U.S.C. § 3553(a)(2)(D)). Second, and related, the court determined that "prison alone will neither rehabilitate an individual critically in need of substance abuse treatment, nor, in the long run, protect society against him. Bad Marriage is such an individual." *Id.* at 1115.

*Bad Marriage I* relied on 18 U.S.C. § 3553(a)(2)(D) for the proposition that the district court should have considered the extent to which its sentence would help rehabilitate Bad Marriage. *See id.* at 1114. Thus, the relevant law of the case established by *Bad Marriage I* was that under § 3553(a): (1) Bad Marriage's criminal history could not be the basis for an increased sentence, because, absent treatment for alcoholism, an increased sentence in his case would not serve the underlying purposes of sentencing, and (2) the need to protect society from Bad Marriage also could not be the basis for an increased sentence, again because, absent treatment for alcoholism, detention would serve no long term protection purpose. *See Herrington*, 12 F.3d at 905 (holding that an intermediate determination made in a previous appellate decision was law of the case, stating that "the district court did not err in concluding that our rejection of the $810,000.00 lost value damages figure set an upper limit on the amount of the Herringtons' recoverable damages").

Under the law of the case doctrine, this panel is not to judge whether these propositions are correct as a matter of law or fact, unless one of the exceptions in the doctrine applies. No new evidence was introduced on remand, and no other changed circumstances exist. In addition, while I might well have ruled differently had I been on the original panel, I am not prepared to declare its rulings *clear* error, nor do I believe that a manifest injustice would result by following the panel's rulings. The majority issues no such pronouncements

either, nor has the government so argued. Thus, the only pertinent question is whether *Booker* so undermined the *legal* basis for these rulings as to permit the district court to ignore them on remand.

The key propositions established by *Bad Marriage I*, aside from the directive to sentence within a particular, mandatory Guidelines range, are perfectly consistent with *Booker* — indeed, somewhat prescient. Post-*Booker*, the district court *must* consider the factors outlined in § 3553(a) in determining its sentence, *see Booker*, 125 S. Ct. at 764, which is precisely what the panel in *Bad Marriage I* did. And, while *Booker* held that the Guidelines are advisory, it did not call into question any principles concerning the appropriateness under § 3553(a) of imposing lengthy prison sentences on individuals whose crimes are traceable to alcoholism. Thus, *Booker* did not justify disregarding the *Bad Marriage I* court's determinations regarding the weight that should attach to Bad Marriage's history of alcoholism and need for treatment in determining the efficacy of a long prison sentence. *See Ingle v. Circuit City*, 408 F.3d 592, 594-95 (9th Cir. 2005) (holding that intervening authority was not on point and therefore the district court properly followed the law of the case).

## IV.

The district court did not follow the law of the case. In pertinent part, the district court justified its forty-eight month sentence as follows:

> It is undisputed on this record that this defendant has an extensive criminal record.

> And I see nothing in this record that I can point to with any meaningful assurance that this defendant will not offend again if given the opportunity to do so.

This record is patently clear that Mr. Bad Marriage is capable of committing what can only and realistically be described as brutal and degrading acts of violence. And in this particular case, an act of violence directed to a victim who was essentially defenseless. . . .

. . . .

This record demonstrates that Mr. Bad Marriage is an extremely dangerous person, capable of inflicting severe harm upon others, and particularly inflicting severe harm upon others who are vulnerable and essentially defenseless. . . . And I have yet to hear anything in the nature of a definitive acknowledgment of any expression of pity for the person whom [Bad Marriage] so severely harmed. . . .

. . . .

And it is my determination that the need for punishment in this case is great — and frankly, mitigated by nothing that you, Mr. Bad Marriage, have brought to this court's attention.

And in my judgment, the public and your victims have to be protected from you.

. . . .

And I want to make clear on the record that, Mr. Bad Marriage, the sentence that I'm going to impose is not being placed where it will be to punish you for a drinking problem. Nor is this sentence that this court is going to impose in any way to penalize you for being a Native American. . . .

This sentence that's going to be imposed is to recognize the hostility and brutality of your act of

assault upon this defenseless woman. And it is to punish the brutal conduct that you engaged in in which you inflicted seriously bodily harm upon her.

And it is a sentence that in the view of this court is necessary to protect the public in the future from your brutal and unlawful conduct.

As these statements indicate, the district court relied, in large portion, on sentencing rationales that *Bad Marriage I* expressly repudiated. The district court justified its sentence, in part, on the ground that Bad Marriage had an "extensive criminal history," but *Bad Marriage I* stated that "[t]o sentence Bad Marriage to a longer prison term on the basis of [his] record would serve no useful purpose." 392 F.3d at 1114. In addition, the district court relied on its concern that Bad Marriage would "offend again" and that "the public . . . [must] be protected from" Bad Marriage. *Bad Marriage I* held, however, that "prison alone" would not rehabilitate Bad Marriage, nor would it "protect society against him." *Id.* at 1115.

Also, the district court refused to take into account considerations that the *Bad Marriage I* court prescribed. In particular, *Bad Marriage I* established that the district court needed to give strong weight to Bad Marriage's need for treatment in devising a sentence. *See id.* at 1114 (noting that "[t]he underlying purposes of sentencing include . . . the provision of treatment to a defendant in need of it"); *id.* (noting that "the length and character of Bad Marriage's criminal record is clearly the result of a serious drinking problem"); *id.* at 1115 ("[P]rison alone will [not] rehabilitate an individual critically in need of substance abuse treatment . . . . Bad Marriage is such an individual.").

On remand, the district court did not consider Bad Marriage's need for treatment at all. Instead, the district court misunderstood the *Bad Marriage I* court's discussion of treatment

for alcoholism. *Bad Marriage I* noted the necessity of providing treatment to individuals whose crimes are related to their alcoholism and observed that "[a]lcohol abuse on Indian reservations is a social problem of devastating scope." *Id.* at 1114. The district court's only reference to this discussion in *Bad Marriage I* is as follows:

> And I want to make clear on the record that, Mr. Bad Marriage, the sentence that I'm going to impose is not being placed where it will be to punish you for a drinking problem. Nor is this sentence that this court is going to impose in any way to penalize you for being a Native American. . . . .

The district court thus misread *Bad Marriage I* as standing for the proposition that the district court could not sentence Bad Marriage to a long sentence *on the ground* that Bad Marriage had a drinking problem or was a Native American. Instead, the relevant portion of *Bad Marriage I* stood for the proposition that the district court should consider goals of rehabilitation through treatment for alcoholism when issuing its sentence.

True, the district court did not rely *solely* on justifications expressly repudiated in *Bad Marriage I*. The district court also justified its sentence on the grounds that the offense was especially brutal and that Bad Marriage was not sufficiently remorseful, justifications that *Bad Marriage I* had no occasion to address. The fact that some of the district court's reasons for imposing the long sentence did not violate the law of the case does not, however, immunize the sentence for law of the case purposes. Rather, the district court failed to follow *Bad Marriage I* by relying on determinations that *Bad Marriage I* repudiated and by failing to consider factors it declared relevant.

For the foregoing reasons, I would hold that the district court abused its discretion by not following the law of the

case. Again my conclusion is *not* that I would have struck down the forty-eight month sentence were I reviewing it in the first instance, or that, had I been on the *Bad Marriage I* panel, I would have decided some or all of the issues as the panel did. Rather, my point is that the law of the case doctrine, "a judicial invention designed to aid in the efficient operation of court affairs," *Milgard Tempering, Inc.*, 902 F.2d at 715, has independent significance and must be given effect if the federal trial and appellate courts are to function efficiently and as coherent, interconnected, but hierarchical institutions. The district courts need to follow principles announced by courts of appeal in a particular case, absent an acceptable reason why not, and we ourselves cannot reconsider in a second appeal issues decided in a first one, again absent an acceptable reason for doing so. Here, the change in the law provides a compelling reason for not sentencing within the prescribed Guidelines range, but does not provide an acceptable reason for not following the intermediate rulings contained in *Bad Marriage I*.

I would therefore vacate the sentence and remand with instructions that Bad Marriage be resentenced in accord with the principles established in *Bad Marriage I*, described above.[2]

---

[2]I would probably remand to a different judge at this juncture, because the district court's treatment of *Bad Marriage I* suggests a discomfort with following it. *See United States v. Sears, Roebuck & Co.*, 785 F.2d 777, 781-82 (9th Cir. 1986).