**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

UNITED STATES OF AMERICA,
    *Plaintiff-Appellee,*

  v.

RONALD THRASHER,
    *Defendant-Appellant.*

No. 05-35929

D.C. Nos.
CV-03-00204-RE
CR-98-00388-RE

OPINION

Appeal from the United States District Court
for the District of Oregon
James A. Redden, District Judge, Presiding

Argued and Submitted
August 23, 2006—Seattle, Washington

Filed April 18, 2007

Before: J. Clifford Wallace, Ronald M. Gould, and
Marsha S. Berzon, Circuit Judges.

Opinion by Judge Wallace;
Concurrence by Judge Berzon

**COUNSEL**

Per C. Olson, Hoevet Boise & Olson, P.C., for the defendant-appellant.

Gary Y. Sussman, Assistant United States Attorney, Portland, Oregon, for the plaintiff-appellee.

## OPINION

WALLACE, Senior Circuit Judge:

Thrasher appeals from the district court's denial of his 28 U.S.C. § 2255 petition. We have jurisdiction pursuant to 28 U.S.C. § 2253, and we affirm.

## I

In April 1997, Tia Carlson was driving a Ford automobile in Gresham, Oregon. Thrasher was in the passenger seat. Officer Durbin of the Gresham Police Department stopped the Ford after observing several traffic violations. When Carlson admitted that she had recently used methamphetamine, Officer Durbin arrested her for driving under the influence of an intoxicant and placed her in his police car.

Officer Durbin returned to the Ford, where he informed Thrasher that Carlson was under arrest and that he would impound the vehicle. Thrasher showed Officer Durbin an Oregon driver's license, which falsely indicated that his name was Trevor Shaw. Officer Durbin told Thrasher that he was free to go, and Thrasher departed on foot.

When Officer Durbin searched the Ford, he discovered a briefcase containing a loaded .380 caliber semi-automatic pistol. Carlson first denied knowing anything about the briefcase and its contents, but later at the police station her story changed. According to Officer Durbin, she stated "that she knew that the gun was in the briefcase and knew who the briefcase belonged to." Thrasher was subsequently apprehended and indicted for being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1). The case went to trial.

During opening argument, Storkel, Thrasher's counsel, advised the jury that it would hear testimony from Thrasher's

former girlfriend, Renee Scarlett (or Rene Scarlet). Storkel set forth the following theory of the case:

> Well, Rene Scarlet and Ronald Thrasher had a fight and they broke up. And, Mr. Thrasher, when he left Rene Scarlet's house, he had a hairbrush, that was it because she wanted him out; and he got out. All he left with is a hairbrush. And, when he went with that hairbrush, he got a ride from a tall skinny friend who took him over to his sister's house and dropped him off. He was there for three days before Tia Carlson ever shows up.
>
> We are also going to find out how the stuff got in the car — how Mr. Thrasher's stuff got in the car.
>
> The stuff that belonged to Mr. Thrasher got in that car because it was packed up by Rene Scarlet; and, Tia Carlson went over and picked up a whole bunch of items of Mr. Thrasher's and put them in the car; and, there was also some things that didn't belong to Mr. Thrasher that went into that car and were packed up.
>
> One of the items that didn't belong to him, it wasn't his and he had no idea in this big jumble of stuff that was there when Tia Carlson came to pick him up was this handgun.

Carlson testified that two days before her arrest, Thrasher called her and indicated that he had been fighting with Scarlett. Carlson said that she picked up Thrasher's belongings at Scarlett's house and met with him at a motel; that Trasher had a briefcase with him at the time; that after spending the night together in the motel, she and Thrasher went to the home of his sister, Laurie Odom; and that while there, Thrasher showed both Carlson and Odom the contents of the briefcase, which included the pistol. Carlson testified that she and

Thrasher were stopped in the Ford after spending the night at Odom's house.

Odom, by contrast, testified that Thrasher arrived at her house three days prior to Carlson's arrest and that Thrasher remained at her home during those three days until Carlson picked him up in the Ford, which was packed with clothes and "stuff." Odom testified that she never saw Thrasher with either a briefcase or a firearm during his stay at her home. Scarlett was not called to testify.

Thrasher was convicted. After unsuccessfully pursuing direct appeal of his conviction, *see United States v. Thrasher*, No. 00-30143, 14 Fed. Appx. 966 (9th Cir. July 30, 2001) (unpublished), Thrasher filed a section 2255 petition, in which he argued that the government had engaged in misconduct and that he had been denied effective assistance of counsel. Thrasher alleged that Storkel "fail[ed] to investigate, interview and call as witnesses at trial" various people, including Scarlett, and that Storkel failed to object to testimony that Thrasher had warrants outstanding for his arrest.

In response to the section 2255 petition, the government offered Storkel's affidavit, which indicated that he was planning to call Scarlett as a witness until she approached him during a break in trial and said that "she would not lie for [Thrasher]" and that she was "going to tell the truth, which would not be helpful to [Thrasher's] case." Storkel's affidavit also stated that he consulted with Thrasher, who indicated that he would leave the decision whether to call Scarlett as a witness to Storkel's "professional judgment." According to Storkel, it was on this basis that he decided not to call Scarlett.

Thrasher, on the other hand, stated in his affidavit that "Storkel never sought input from [him] before deciding to not call [Scarlett]" and that he never told Storkel that he would leave the decision whether to call Scarlett to Storkel's "professional judgment." Thrasher also stated that Scarlett had

told him that "when she showed up to testify, . . . Storkel simply told her to leave," and that she did not tell him that she advised Storkel that she would testify in a way that was harmful to Thrasher's case.

The district court denied the section 2255 petition without holding an evidentiary hearing. On appeal, we held that in the absence of any "record evidence upon which Thrasher's credibility could be determined," remand was necessary "for a hearing to resolve a critical disputed fact: whether Scarlett told Storkel that she was going to testify unfavorably to Thrasher." *United States v. Thrasher*, No. 03-35679, 122 Fed. Appx. 876, 877 (9th Cir. Nov. 29, 2004) (unpublished) (*Thrasher I*). "This factual dispute," we continued, was "central to the reasonableness of Storkel's decision not to call Scarlett." *Id.* We emphasized that the district court's order was vacated only "to the extent the petition raises claims based on Storkel's mid-trial decision not to call Scarlett." *Id.* This reflected our determination that the district court had "properly rejected" Thrasher's remaining arguments, including his argument "that Storkel provided ineffective assistance by not investigating Scarlett more carefully before mentioning her as a witness in his opening statement." *Id.*

On remand, the district court held an evidentiary hearing, at which Scarlett, Odom, and Storkel, among others, testified. During cross-examination, Storkel identified a Bureau of Alcohol, Tobacco and Firearms (ATF) investigative report and indicated that he may have received the report from the government before trial. The report relates to three telephone conversations between Scarlett and ATF Special Agent Lyon. At the hearing, Thrasher's appellate counsel suggested that the report constituted "evidence . . . that's contrary to what [Storkel] expected [Scarlett] to testify to[.]"

Ultimately, however, the district court rejected Thrasher's argument based on the ATF report that "Storkel should have known that Scarlett might change her testimony, and that

Storkel should have verified Scarlett's testimony before mentioning her during his opening statement." *United States v. Thrasher*, Nos. CR 98-388-RE, CV 03-204-RE, at 9 (D. Or. July 6, 2005) (unpublished) (*Thrasher II*). The district court held that *Thrasher I*, which did not address the ATF report, nonetheless foreclosed consideration of an ineffective assistance of trial counsel argument based on the contents of the report.

The district court went on to determine, "[i]n response to [our] narrow question on remand," that

> Storkel and Yarbrough [Storkel's hired private investigator] gave credible, unequivocal, and consistent testimony about their interactions with both Scarlett and defendant. On the other hand, Scarlett acknowledged she had been a heavy methamphetamine user whose memory had been affected by her drug abuse and the passage of time. Her testimony and defendant's affidavit are in substantial conflict in several respects . . . .

Based on its finding that "Scarlett did tell Storkel that she was going to testify unfavorably to Thrasher," the district court reaffirmed its denial of Thrasher's section 2255 petition.

Thrasher subsequently filed a motion for reconsideration, which the district court described as seeking reevaluation of "the evidentiary hearing testimony and briefing" so that the court could determine "whether Storkel provided ineffective assistance of counsel when he told the jury in opening statement that Scarlett would testify she placed the firearm in defendant['s] briefcase." The district court held that consideration of this issue was foreclosed by our mandate in *Thrasher I* and denied the motion.

Thrasher first contends that the district court erred by ruling that *Thrasher I* foreclosed consideration of his argument,

based on the ATF report, that trial counsel provided ineffective assistance by telling "the jury in opening statement that it would hear from [Scarlett]." Second, he argues that the district court likewise erred by denying his motion for reconsideration. Finally, Thrasher asserts that Storkel in fact provided ineffective assistance of counsel by "promising" the jury during his opening statement that it would hear from Scarlett despite having "reason to know that the witness should not be called." Significantly, Thrasher fails to challenge the district court's determination of the issue we remanded in our limited mandate: whether Storkel's mid-trial decision not to call Scarlett as a witness constituted ineffective assistance of counsel.

## II

**[1]** We first consider whether the district court had subject matter jurisdiction over Thrasher's arguments. The government's brief suggests that the issue of the district court's jurisdiction implicates longstanding federal court doctrines known as "the law of the case" and "the rule of mandate."

> The law of the case doctrine states that the decision of an appellate court on a legal issue must be followed in all subsequent proceedings in the same case. The doctrine is a judicial invention designed to aid in the efficient operation of court affairs. Under the doctrine, a court is generally precluded from reconsidering an issue previously decided by the same court, or a higher court in the identical case. For the doctrine to apply, the issue in question must have been decided explicitly or by necessary implication in the previous disposition.

*Herrington v. County of Sonoma*, 12 F.3d 901, 904 (9th Cir. 1993) (internal citations, quotations, and punctuation omitted). The rule of mandate doctrine, on the other hand, provides:

> When a case has been once decided by this court on appeal, and remanded to the [district court], whatever was before this court, and disposed of by its decree, is considered as finally settled. The [district court] is bound by the decree as the law of the case, and must carry it into execution according to the mandate. That court cannot vary it, or examine it for any other purpose than execution; or give any other or further relief; or review it, even for apparent error, upon any matter decided on appeal; or intermeddle with it, further than to settle so much as has been remanded. . . . But the [district court] may consider and decide any matters left open by the mandate of this court . . . .

*In re Sanford Fork & Tool Co.*, 160 U.S. 247, 255-56 (1895). "Thus, a district court could not refuse to dismiss a case when the mandate required it, and a district court could not revisit its already final determinations unless the mandate allowed it." *United States v. Cote*, 51 F.3d 178, 181 (9th Cir. 1995) (citations omitted).

Courts have not been consistent in describing the mandate doctrine. We have said the doctrine is "similar to, but broader than, the law of the case doctrine." *Id.* By contrast, several of our sister circuits have described the rule of mandate doctrine as "nothing more than a specific application of the 'law of the case' doctrine." *Piambino v. Bailey*, 757 F.2d 1112, 1120 (11th Cir. 1985); *see also Kavorkian v. CSX Transp., Inc.*, 117 F.3d 953, 958 (6th Cir. 1997); *City of Cleveland, Ohio v. Fed. Power Comm'n*, 561 F.2d 344, 348 (D.C. Cir. 1977). There certainly is a difference between the two doctrines, and they are not identical. While both doctrines serve an interest in consistency, finality and efficiency, the mandate rule also serves an interest in preserving the hierarchical structure of the court system.

**[2]** We have described our mandate as limiting the district court's "authority" on remand, which is jurisdiction language.

*See United States v. Pimentel*, 34 F.3d 799, 800 (9th Cir. 1994). Several of our sister circuits have also considered the mandate as jurisdictional. *See, e.g., Seese v. Volkswagenwerk, A.G.*, 679 F.2d 336, 337 (3d Cir. 1982); *Tapco Prods. Co. v. Van Mark Prods. Corp.*, 466 F.2d 109, 110 (6th Cir. 1972). Other circuits, however, have reached a different conclusion, holding that their mandates are not jurisdictional. *See, e.g., United States v. Matthews*, 312 F.3d 652, 657 (5th Cir. 2002); *Tronzo v. Biomet, Inc.*, 236 F.3d 1342, 1349 (Fed. Cir. 2001); *United States v. Gama-Bastidas*, 222 F.3d 779, 784 (10th Cir. 2000); *United States v. Bell*, 988 F.2d 247, 251 (1st Cir. 1993). The circuits appear to be split four to four on the issue. We cannot change the position of our court absent en banc reconsideration.

**[3]** It is true that the Supreme Court has called into question whether the law of the case doctrine is jurisdictional. The Court has stated that "[t]he law of the case doctrine . . . simply 'expresses' common judicial 'practice'; it does not 'limit' the courts' power." *Castro v. United States*, 540 U.S. 375, 384 (2003), *quoting Messenger v. Anderson*, 225 U.S. 436, 444 (1912). *Castro*, however, did not implicate the rule of mandate doctrine. Therefore, in this circuit, if a district court errs by violating the rule of mandate, the error is a jurisdictional one.

### III

**[4]** Our limited remand dealt with Storkel's mid-trial decision not to call Scarlett as a witness. The district court held that this did not constitute ineffective assistance of counsel. Thrasher does not challenge this determination on appeal, and we affirm. That should end the appeal, but Thrasher objects because the district court refused to rule on a different issue: whether Storkel's opening statement identifying Scarlett as a witness constituted ineffective assistance of counsel. We therefore consider the district court's determination that our mandate deprived it of the authority to consider the merits of

Thrasher's ineffective assistance of trial counsel argument based on the ATF report. Our review is de novo. *Cassett v. Stewart*, 406 F.3d 614, 620 (9th Cir. 2005).

**[5]** "[W]e have repeatedly held, in both civil and criminal cases, that a district court is limited by this court's remand in situations where the scope of the remand is clear." *Mendez-Gutierrez v. Gonzales*, 444 F.3d 1168, 1172 (9th Cir. 2006); *see also Twentieth Century Fox Film Corp. v. Entm't Distrib.*, 429 F.3d 869, 883 (9th Cir. 2005) ("There is nothing in our prior decision that indicates that we issued an open remand. Rather, in remanding to the district court, our opinion contemplates a trial to resolve the only remaining genuine issue of material fact"). For instance, in *Planned Parenthood of Columbia/Willamette, Inc. v. American Coalition of Life Activists*, a prior en banc decision had "affirmed the district court's judgment in all respects but for the constitutionality of the punitive damages awards." 422 F.3d 949, 966 (9th Cir. 2005). On remand, the defendant attempted to raise seven new issues, including intervening decisions of the Supreme Court. *Id.* We narrowly construed the scope of the remand, holding "[o]ur mandate in [the prior decision] was clear. We finally adjudicated all issues except for, and remanded only for consideration of, the constitutional implications of the punitive damages awards. Accordingly, [defendant's] additional issues [were] not open for review." *Id.* at 967.

**[6]** The district court did not err by refusing to consider the merits of Thrasher's ineffective assistance of trial counsel argument based on the ATF report. *Thrasher I* remanded for a single purpose: "a hearing to resolve *a* critical disputed fact: whether Scarlett told Storkel that she was going to testify unfavorably to Thrasher." (Emphasis added.) The plain language of the disposition precluded the district court from considering any other arguments concerning Storkel's effectiveness. We therefore affirm *Thrasher II* as well as the district court's denial of Thrasher's motion for reconsideration.

**AFFIRMED.**

---

BERZON, Circuit Judge, concurring:

I agree with the panel that the law of the case exceptions do not apply to the rule of the mandate. *See United States v. Bad Marriage*, 439 F.3d 534, 541-42 (9th Cir. 2006) (Berzon, J., dissenting). I also agree, under compulsion of our precedent, that the rule of mandate is in some sense jurisdictional. *See United States v. Kellington*, 217 F.3d 1084, 1093 (9th Cir. 2000) (stating that, in interpreting the mandate, "the ultimate task is to distinguish matters that have been decided on appeal, and are therefore *beyond the jurisdiction of the lower court*, from matters that have not" (emphasis added)); *United States v. Pimentel*, 34 F.3d 799, 800 (9th Cir. 1994) (per curium) (describing the mandate as limiting the district court's "authority").

Although this case does not raise the issue, there are in my view very limited circumstances, as suggested in *Bad Marriage*, 439 F.3d at 541-42 (Berzon, J., dissenting), in which the district court may not be required to follow the directions we have given in our mandate. This conclusion would not necessarily be inconsistent with the use of the term "jurisdiction." *See Kontrick v. Ryan*, 540 U.S. 443, 454-55 (2004) (" 'Jurisdiction' . . . is a word of many, too many, meanings."); *see also Eberhart v. United States*, 126 S. Ct. 403, 406 (per curiam); *United States v. Sadler*, No. 06-10234, ___ F.3d ___, 2007 WL 610976, at *2 (9th Cir. Mar. 1, 2007).