**NOT FOR PUBLICATION**
UNITED STATES COURT OF APPEALS
FOR THE NINTH CIRCUIT

**FILED**

AUG 24 2022

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

| | |
|---|---|
| U.S. SECURITIES AND EXCHANGE COMMISSION, | No. 21-56090 |
| Plaintiff-Appellee, | D.C. No. SACV 16-00974-CJC (AGRx) |
| v. | |
| CHARLES C. LIU; XIN WANG a/k/a LISA WANG, | MEMORANDUM* |
| Defendant-Appellant. | |

Appeal from the United States District Court
for the Central District of California
Cormac J. Carney, District Judge, Presiding

Submitted August 22, 2022**
Pasadena, California

Before: WATFORD and OWENS, Circuit Judges, and PRESNELL,*** District
Judge.

---

\* This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

\*\* The Panel unanimously concludes that this case is suitable for decision without oral argument. *See* Fed. R. App. P. 34(a)(2).

\*\*\* The Honorable Gregory A. Presnell, United States District Judge for the Middle District of Florida, sitting by designation.

Charles Liu and Xin Wang (husband and wife) appeal the district court's judgment of disgorgement. Xin Wang also appeals the district court's denial of her motion to dismiss for lack of jurisdiction due to extraterritorial conduct. We have jurisdiction under 28 U.S.C. § 1291 and we affirm.

This appeal arises from the SEC's civil action against Appellants Charles Liu ("Liu") and Xin Wang ("Wang") for violating Section 17(a)(2) of the Securities Act of 1933. Appellants solicited nearly $27 million from foreign investors to develop a cancer treatment center under the EB-5 immigration program. Each investor was required to put up at least a $500,000 "Capital Contribution" and a $45,000 "Administrative Fee." The Private Offering Memorandum ("POM") given to investors stated that the Capital Contribution would be used for construction costs, equipment purchases, and other items needed to build and operate the cancer treatment center. The POM also stated that "Offering Expenses, including legal, accounting and administration expenses, and commissions and fees related to this Offering," would be paid from the Administrative Fee, not the Capital Contribution.

Despite these commitments and disclaimers, Liu diverted most of the Capital Contributions to marketing companies, salaries for himself and Wang, and personal bank accounts and withdrawals. The district court granted summary judgment for the SEC and ordered Appellants to disgorge the entirety of the

21-56090

investors' contributions, *SEC v. Liu*, 262 F. Supp. 3d 957 (C.D. Cal. 2017), and this Court affirmed, *SEC v. Liu*, 754 F. App'x 505 (9th Cir. 2018).

The Supreme Court granted Appellants' petition for certiorari and took up the issue of whether disgorgement is a permissible remedy in securities fraud cases. While the Supreme Court answered that question in the affirmative, it overturned the disgorgement award and remanded with instructions to recalculate disgorgement after deducting legitimate expenses. *See Liu v. SEC*, 140 S. Ct. 1936 (2020). On remand, the district court ordered Appellants to disgorge $20,871,758.81, jointly and severally, and Appellants now appeal that judgment.

This Court reviews de novo whether a district court has complied with a mandate on remand. *Cassett v. Stewart*, 406 F.3d 614, 620 (9th Cir. 2005). This Court reviews a district court's imposition of a disgorgement award for abuse of discretion. *SEC v. Feng*, 935 F.3d 721, 737 (9th Cir. 2019). And this Court reviews the district court's findings of fact for clear error, viewing the evidence in the light most favorable to the prevailing party. *SEC v. Rubera*, 350 F.3d 1084, 1093–94 (9th Cir. 2003).

The Supreme Court held that "courts must deduct legitimate expenses before ordering disgorgement under [15 U.S.C.] § 78u(d)(5)." *Liu*, 140 S. Ct. at 1950. A district court must therefore ascertain "whether expenses are legitimate or whether they are merely wrongful gains under another name." *Id.* (citation and quotation

marks omitted). Although the Supreme Court declined to offer specific guidance, it noted that some of Appellants' expenses "arguably have value independent of fueling a fraudulent scheme," such as expenses directed towards "lease payments and cancer-treatment equipment." *Id.*

"The SEC 'bears the ultimate burden of persuasion that its disgorgement figure reasonably approximates the amount of unjust enrichment.'" *SEC v. Platforms Wireless Int'l Corp.*, 617 F.3d 1072, 1096 (9th Cir. 2010) (quoting *SEC v. First City Fin. Corp.*, 890 F.2d 1215, 1232 (D.C. Cir. 1989)). Once the SEC meets its burden and provides a reasonable approximation of a defendant's ill-gotten gains, the burden shifts to the defendant to "demonstrate that the disgorgement figure was not a reasonable approximation." *Id.* (quoting *First City Fin.*, 890 F.2d at 1232). In the context of the Supreme Court's mandate, this standard necessarily required the SEC to provide a reasonable approximation of the legitimate expenses, if any, that should be deducted from the $27,000,000 paid by the investors.

In making its calculation, the district court deducted $2,210,701 in administrative expenses,[1] $3,105,809 in construction, design, equipment, and other related payments, and $234,899.19 which was left in Appellants' corporate bank

---

[1] This figure represents the total amount of administrative fees collected from the investors.

accounts. After deducting those costs, the district court ordered Appellants to disgorge the remaining $20,871,758.81 of investor contributions. The district court declined to deduct any other claimed expenses because those represented Appellants' pecuniary gains or were used to further the fraudulent scheme.

To sum things up, this iteration of the case requires us to decide the proper method of calculating disgorgement as an equitable remedy in an SEC enforcement action.

In framing the issue, the Supreme Court used the term "net profits" to cabin the wrongful gains obtained by Appellants. From an accounting standpoint, this term is a misnomer in the context of this case.[2] Net profits connote the result of deducting expenses from the revenues of an ongoing business enterprise. *See* Jae K. Shim & Joel G. Siegel, *Dictionary of Accounting Terms*, 312–13 (Barron's, 5th ed. 2010). Of course, the net profits of a business can be the subject of disgorgement in the appropriate case. But here, there were no revenues and no profit, because Appellants stole the investment capital necessary to build the cancer treatment facility. Indeed, Appellants make this very argument: No net profit, thus no disgorgement. Clearly, this outcome would not produce an equitable remedy for Appellants' fraud.

---

[2] The Supreme Court noted in its opinion that disgorgement, as an equitable remedy, has "gone by different names," but "whatever the name, has been a mainstay of equity courts." *Liu*, 140 S. Ct. at 1942–43.

21-56090

In its opinion, the Supreme Court noted the foundational principle that it would be inequitable for a wrongdoer to gain from his own wrong. The Court also noted that "when the entire profit of a business or undertaking results from the wrongful activity . . . the defendant will not be allowed to diminish the show of profits by putting in unconscionable claims for personal services or other inequitable deductions."[3] *Liu*, 140 S. Ct. at 1945 (citation and quotation marks omitted). While the district court ultimately opted to deduct certain expenses in deference to the Supreme Court's concerns, it expressed doubt as to whether Appellants were entitled to any deductions. But no party appeals those deductions, so we decline to address them further.

With this framework in mind, we find no error with the district court's factual findings as to the illegitimate expenses or with the district court's disgorgement award. Appellants spent nearly $11 million on payments to marketing companies[4] and professional service providers. Those payments far exceeded the total amount of administrative fees collected and violated the terms of the POM.[5] Appellants also paid themselves $6,858,092 as salaries and withdrew

---

[3] When used in the context of this case, the term "profit" necessarily refers to the investors' payments.

[4] Evidence also shows that Wang was a high-level official at one of the marketing companies that was paid several million dollars from investor funds. *See Liu*, 262 F. Supp. 3d at 964.

[5] These payments fell within the definition of "Offering Expenses" which, according to the POM, could only be paid from the administrative fees.

an additional $2,367,167 from the project's corporate accounts for personal expenses like car and school tuition payments and other recreational activities.[6] These payments represent Appellants' ill-gotten gains and are in no way legitimate business expenses.

Appellants also made a $3 million payment to Mevion Medical Systems, Inc., for a proton therapy machine, even though they had already paid Optivus Proton Beam Therapy, Inc., $368,100 for the same type of equipment. The district court determined that this was done to cut out Liu's business partner, Dr. John Thropay, in order to prevent the exposure of Liu's fraudulent activities. This finding is supported by the factual record, and we agree that Liu should not be able to deduct this payment. Accordingly, we affirm the district court's final disgorgement award.

Next, Appellants argue that the district court erred in holding them jointly and severally liable for the disgorgement award because Wang was minimally involved in the EB-5 scheme. Generally, courts may not impose disgorgement on defendants for profits "which have accrued to another, and in which they have no participation." *Liu*, 140 S. Ct. at 1949 (quoting *Belknap v. Schild*, 161 U.S. 10, 25–26 (1896)). But the common law does "permit liability for partners engaged in

---

[6] For example, bank transaction records reveal that an ATM withdrawal was made in the amount of $56,173 from the Pacific Proton Therapy Regional Center bank account at "Caesar Palace Las Vegas."

concerted wrongdoing." *Id.* Wang played an integral role in the EB-5 scheme by promoting the proton therapy project and soliciting investors. The evidence also shows that Wang was the "Vice President of Marketing" for Beverly Proton Center, that she signed a salary agreement for her work in that position, and that she was an officer of one of the marketing companies to which Liu diverted substantial investor funds, *Liu*, 262 F. Supp. 3d at 963–64. We see no error with these factual findings, nor with the district court's decision to hold Liu and Wang jointly and severally liable.[7]

Last, we address the district court's denial of Wang's motion to dismiss. The district court determined that Wang's conduct was sufficient to subject her to the SEC's jurisdiction. We affirm the denial, albeit on a different ground from that relied upon by the district court. This panel considered Wang's extraterritoriality argument on her initial appeal. We rejected that argument as waived and affirmed her liability. *See Liu*, 754 F. App'x at 508. Wang did not appeal this ruling and the Supreme Court did not disturb her liability when it remanded this case.[8]

The SEC contends that under the rule of mandate, the district court could not

---

[7] The Supreme Court acknowledged that these facts could very well support the imposition of joint-and-several liability. *See Liu*, 140 S. Ct. at 1949. The Court also noted that that Appellants did not "suggest that their finances were not comingled, or that one spouse did not enjoy the fruits of the scheme, or that other circumstances would render a joint-and-several disgorgement order unjust." *Id.*

[8] Indeed, we recently held that Appellants' "liability had already been established as law of the case." *SEC v. Liu*, 851 F. App'x 665, 668 (9th Cir. 2021).

disturb Wang's liability and was therefore required to deny her motion to dismiss.[9]

We agree. "[I]n both civil and criminal cases, . . . a district court is limited by this court's remand in situations where the scope of the remand is clear." *United States v. Thrasher*, 483 F.3d 977, 982 (9th Cir. 2007) (quoting *Mendez-Gutierrez v. Gonzales*, 444 F.3d 1168, 1172 (9th Cir. 2006)). Because the scope of the remand in this case was restricted to the recalculation of the disgorgement award, the district court could not venture beyond that issue to address Wang's liability. Therefore, we affirm the denial of Wang's motion to dismiss.

**AFFIRMED.**

---

[9] Wang contends that the SEC waived this argument by failing to raise it before the district court below. In this Circuit, the rule of mandate "limit[s] the district court's authority on remand," and is therefore "jurisdictional" in nature. *See Thrasher*, 483 F.3d at 982 (quotation marks omitted). This argument may therefore be considered for the first time on appeal.