UNITED STATES of America, Appellee,

v.

Steven W. ARNETT, Appellant.

No. 79–1243.

United States Court of Appeals,
Ninth Circuit.

Nov. 26, 1979.

Rehearing Denied Nov. 26, 1979.

Asst. Federal Public Defender, John W. Tapp, Seattle, Wash., for appellant.

Jerry Diskin, Christine McKenna, Asst. U. S. Attys., Seattle, Wash., on brief; Kenneth R. Parker, Seattle, Wash., argued for appellee.

Before TRASK and GOODWIN, Circuit Judges, and EAST *, District Judge.

* The Honorable William G. East, Senior United States District Judge for the District of Oregon, sitting by designation.

GOODWIN, Circuit Judge:

Pursuant to a plea agreement, Steven W. Arnett pleaded guilty to one count of an indictment charging several illegal acts involving methamphetamine. He appeals from a three-year sentence.

The government had promised that it would dismiss the remaining counts, and would "take no position as to the appropriate sentence." At the sentencing hearing on the count to which Arnett pled guilty, the government did not oppose Arnett's argument for probation rather than a prison term. Nevertheless, the judge sentenced Arnett to incarceration.

Two days after sentencing, Arnett moved under Fed.R.Crim.P. 35 for a reduction of sentence. His written motion advanced the same arguments that he had urged upon the court during the sentencing hearing. This time, the government did not stand mute.

In a written response to the Rule 35 motion, the government "vigorously oppose[d] any modification" of the original sentence. The government argued that (a) Arnett had presented no new arguments or information bearing on his sentence, (b) no other circumstances regarding the sentence had changed, and (c) the original sentence could be "characterized as generous", because the investigations by the government and the Probation Office showed that Arnett was the more culpable of the two defendants; nonetheless each received the same sentence. The response concluded: "there is no basis for even considering a modification unless and until defendant can come up with some new factor to justify such consideration."

Arnett moved to strike the government's response, on the ground that it violated the plea agreement. The government in turn argued that the plea bargain bound it only to take no position at the time of sentencing, and that the agreement did not affect its duty to make an appropriate response in subsequent proceedings seeking reduction of the sentence.

The court denied the Rule 35 motion. Arnett asks this court to vacate that order and to remand the case for reconsideration of the Rule 35 motion by a different judge. In the trial court, Arnett expressed his belief that transfer to another judge was not necessary unless the court felt it could not disregard the government's response, in which case Arnett would request such a transfer.

One case, *United States v. Ewing,* 480 F.2d 1141 (5th Cir. 1973), tends to support Arnett's position. In *Ewing,* the government promised as part of a plea bargain not to oppose defendant's request for probation. The government attorney at sentencing did not oppose defendant's arguments for probation. The defendant was sentenced to a term in prison. He brought a Rule 35 motion, and a second government attorney, apparently ignorant of the agreement, opposed the motion.[1] The Fifth Circuit held that the Rule 35 proceeding was a part of the entire sentencing process,[2] and that the government's opposition was a violation of the plea bargain.

The government maintains, however, that *Bergman v. Lefkowitz,* 569 F.2d 705 (2d Cir. 1977), is closer in point. The Special State Prosecutor in *Bergman* had promised in a plea agreement that he would recommend that the state court impose no sentence in addition to one previously imposed by a federal district court incident to charges arising from the same facts. The prosecutor did so recommend, but the state court imposed an additional sentence anyway. The prosecutor later opposed a motion in federal court for reduction of sentence. The Second Circuit held that the prosecutor had fulfilled the plea bargain when he made his recommendation, and that, by its very terms, the agreement did not bar him from opposing the motion for reduction of sentence.

---

1. The Fifth Circuit found that the government attorney's opposition to defendant's motion was "apparently inadvertent." *United States v. Ewing,* 480 F.2d 1141, 1143 (5th Cir. 1973).

2. The *Ewing* court held that the Rule 35 motion was an integral part "of the sentencing process *in this case.*" 480 F.2d at 1143 (emphasis added).

While perhaps instructive, neither *Ewing* nor *Bergman* is as dispositive as their respective proponents maintain. In "the recurring appeals which stem from imprecise language used by the parties in the bargaining process preceding a guilty plea," we look to the facts of each case to decide what was "reasonably understood by [defendant] when he entered his plea of guilty." *United States v. Crusco,* 536 F.2d 21, 23, 27 (3d Cir. 1976). The dispositive question, which neither side addresses and which the district court did not discuss, is what the parties to this plea bargain reasonably understood to be the terms of the agreement.

The fundamental teaching in this area, both sides agree, comes from *Santobello v. New York,* 404 U.S. 257, 92 S.Ct. 495, 30 L.Ed.2d 427 (1971):

"* * * [W]hen a plea rests in any significant degree on a promise or agreement of the prosecutor, so that it can be said to be a part of the inducement or consideration, such promise must be fulfilled." 404 U.S. at 262, 92 S.Ct. at 499.

In *Santobello,* defendant had entered a guilty plea in exchange for the prosecutor's promise to make no recommendation concerning sentence. At sentencing, another prosecutor asked for the maximum sentence.[3] The Supreme Court noted that petitioner had "bargained" for the particular plea, and that there must be "specific performance of the agreement." 404 U.S. at 262, 263, 92 S.Ct. 495. Accordingly, it remanded the case for a determination of whether petitioner should be permitted to withdraw his plea, or should be resentenced.

[1, 2] As the language from *Santobello* makes clear, "[a] plea bargain is contractual in nature." *Petition of Geisser,* 554 F.2d 698, 704 (5th Cir. 1977). *See also United States v. Bridgeman,* 173 U.S.App.D.C. 150, 160–61, 523 F.2d 1099, 1109–10 (D.C. Cir.

1975), *cert. denied,* 425 U.S. 961, 96 S.Ct. 1743, 48 L.Ed.2d 206 (1976) ("the decision in *Santobello* * * * involved fundamental principles of contract law, notably those concerning mutually binding promises freely given in exchange for valid consideration"). Plea bargaining, in other words, though a matter of criminal jurisprudence, is subject to contract-law standards. Therefore, the terms of the agreement, if disputed, are to be determined by objective standards. *Johnson v. Beto,* 466 F.2d 478, 480 (5th Cir. 1972).

■ It is for this reason that *Ewing* and *Bergman* are of little help here, involving as they do other parties to other plea agreements. What the parties agreed to in the instant plea bargain is a question of fact. *United States v. Gonzalez-Hernandez,* 481 F.2d 648, 650 (5th Cir. 1973). Resolution of the good-faith disputes over the terms of an agreement should be made by the district court, to whom the plea was originally submitted, "on the basis of adequate evidence." *United States v. Simmons,* 537 F.2d 1260 (4th Cir. 1976).

■ The district court has responsibility under Fed.R.Crim.P. 11 to develop satisfactorily the terms of a plea bargain. *United States v. Scharf,* 551 F.2d 1124 (8th Cir.), *cert. denied,* 434 U.S. 824, 98 S.Ct. 70, 54 L.Ed.2d 81 (1977). *See also United States v. Gonzalez-Hernandez,* 481 F.2d at 650 n.1; *Bryan v. United States,* 492 F.2d 775, 781–82 (5th Cir.) (en banc), *cert. denied,* 419 U.S. 1079, 95 S.Ct. 668, 42 L.Ed.2d 674 (1974).

■ This court does not read *Ewing* to say, as Arnett contends, that a plea bargain committing the government to "take no position as to the appropriate sentence" binds the government, as a matter of law, to remain silent at the time of a motion for

---

**3.** As in *Ewing, supra* n.1, the "second prosecutor [was] apparently ignorant of his colleague's commitment" in *Santobello v. New York,* 404 U.S. 257, 259, 92 S.Ct. 495, 497, 30 L.Ed.2d 427 (1971). The switch of government lawyers or prosecutors, of course, increases the likelihood that a term of the bargain agreed upon original-

ly may later be breached. In *Santobello,* the state admitted that it had breached a promise made, but contended that the mistake was harmless. That situation contrasts with the instant case, where there was no personnel change, and the government contends that it did not break its promise.

reduction of sentence.[4] The question presented here should have been resolved in the trial court by a factual inquiry into the intent of the parties at the time of the agreement.

Because the district court summarily denied the motion to strike the government's response, we cannot tell what the court might have found had a dispute arisen over the intent of the parties. There is nothing in the record permitting this court to resolve the question.

Arnett does not ask this court to remand the case to the sentencing judge, who received the plea, for a factual determination of the intent of the bargain. Instead, he seeks reconsideration of his Rule 35 motion by another judge.

Reconsideration of pending motions by different judges may or may not be a desirable trend in judicial administration. Practices vary.

█ Remand to a different judge is not the usual remedy when error is found in district court proceedings. Remand to a new judge is reserved for "unusual circumstances". *United States v. Robin*, 553 F.2d 8, 10 (2d Cir. 1977) (en banc).

Whether to remand with directions about apportioning district court work requires a weighing of several factors:[5]

"Absent proof of personal bias requiring recusation, Title 28 U.S.C. § 144, the principal factors considered by us in determining whether further proceedings should be conducted before a different judge are (1) whether the original judge would reasonably be expected upon remand to have substantial difficulty in putting out of his or her mind previously-expressed views or findings determined to be erroneous or based on evidence that must be rejected, (2) whether reassignment is advisable to preserve the appearance of justice, and (3) whether reassignment would entail waste and duplication out of proportion to any gain in preserving the appearance of fairness." *United States v. Robin*, 553 F.2d at 10.

On the first cirterion, there is no reason to think that, if the government created error by responding to Arnett's Rule 35 motion, the original district judge would have inordinate difficulty in proceeding as if the response had not been made. Indeed,

---

4. Fifth Circuit cases make it clear that disputes over terms of a plea bargain can be resolved only by study of the facts of each case. In *United States v. Avery*, 589 F.2d 906 (5th Cir. 1979), the Fifth Circuit considered whether the government's promise to stand mute at sentencing implied a promise to give no information to a probation officer that might ultimately be seen by the sentencing judge. The court noted that this was not a question of law, but that a hearing was needed to resolve the factual question of how far the government's promise extended. In *United States v. Gonzalez-Hernandez*, 481 F.2d 648, 650 (5th Cir. 1973), the court cited *Ewing* in holding that a dispute over what the government promised in a plea bargain "is essentially a disagreement as to the facts." In that case, too, because the record did not permit evaluation of the terms of the agreement, the case was remanded for an evidentiary hearing. *See United States v. Carter*, 454 F.2d 426 (4th Cir. 1972) (en banc), *cert. denied*, 417 U.S. 933, 94 S.Ct. 2646, 41 L.Ed.2d 237 (1974) (where defendant and government disputed whether government had promised not to prosecute defendant in exchange for his cooperation in apprehending other defendants, case remanded for evidentiary hearing on existence and terms of alleged bargain).

5. The test set out here was meant to apply to all proceedings on remand, not just retrials. "A resentencing necessitated by the judge's erroneous consideration of certain matters or failure to take others into consideration may involve essentially the same problems and require application of the same criteria." *United States v. Robin*, 553 F.2d at 10.

The question has arisen in a related area, motions under 28 U.S.C. § 2255 to reconsider sentences when the sentencing judge has improperly considered certain invalid prior convictions. We have held that review of these sentences must ordinarily be made by the sentencing judge himself. *Farrow v. United States*, 580 F.2d 1339, 1348–51 (9th Cir. 1978) (en banc). In addition to the statutory history of section 2255, we found that principles of "sound judicial administration" disfavored review by a different judge. 580 F.2d at 1350. These principles parallel those of *Robin*, including the ability of the sentencing judge to re-evaluate the sentence without considering the invalid prior convictions and the avoidance of waste and duplication.

there is little if anything for the district judge to "put out of his mind", because in the main the government said or alluded to nothing that the judge had not heard before or that was not already in the record. Although, in his presentence report, Probation Officer Williams evaluated Arnett's culpability as equal to his codefendant's (and less than the fugitive codefendant's), he testified at the sentencing hearing that Arnett was more culpable than his codefendant. In fact, at the oral hearing, Officer Williams recommended a four-year commitment, one more than Arnett's codefendant had received. In its response to the Rule 35 motion, the government merely paraphrased some of Williams' oral testimony.

The only new information presented in the government's written response was that it vigorously opposed any modification, and that its own investigation showed Arnett to be more culpable than his codefendant. We do not believe either to be the sort of prejudicial information which the district court would have difficulty in ignoring.

Second, there appears to be no injustice. The sentence on its face certainly raises no questions. Moreover, this is not a case of inexcusable government inadvertence or ignorance as in *Ewing* or *Santobello,* but a good-faith disagreement between counsel about an ambiguity in the plea bargain. The essential elements of the bargain were fulfilled. *See United States v. Johnson,* 582 F.2d 335, 337 (5th Cir. 1978), *cert. denied,* 439 U.S. 1051, 99 S.Ct. 732, 58 L.Ed.2d 711 (1979) (*Ewing* "does not give the defendant the right to present an unopposed Rule 35 motion. The government violates *Ewing* only when its opposition violates the essence of the plea bargain.")

The essence of the plea agreement here was Arnett's opportunity to present without opposition all his arguments for proba-

tion at sentencing. The government scrupulously observed its promise during sentencing.

Finally, as the Rule 35 motion came only two days after the district judge had passed upon the same arguments at sentencing, and nothing had changed in the meantime, the possibility of injustice to Arnett seems somewhat remote. Injustice to the government could result from a blind obedience to *Ewing* as read by Arnett.

Considerable waste of time and duplication of effort would result if a different judge were to consider the Rule 35 motion. A new judge would have to learn about the defendant, his background, the plea bargain and the sentence. In considering whether to reduce the sentence, the new judge could only guess what had led the first judge to impose the original sentence. As there is little appearance of unfairness here, the benefits, if any, of remand to a different judge appear slight in comparison to the disadvantages.[6] In single-judge districts, the disadvantages are even more obvious.

Although Arnett did not request this remedy, for the reasons already stated we conclude that the appropriate remedy is to remand the case to the district court for resolution, after hearing, of the dispute as to the terms of the plea bargain. If that court finds that the government did breach the agreement, then Arnett is free to withdraw his guilty plea and stand trial on the original charges, or to renew his Rule 35 motion before the sentencing judge.

The order denying Arnett's Rule 35 motion is vacated, and the case is remanded to the district court.

---

6. In *Farrow v. United States, supra* n.5, we noted that a similar reason supported remand to the sentencing judge:

 "* * * [T]he original judge has unique knowledge of how much weight was given to the allegedly invalid priors in passing sen-

tence. A new judge would not have the benefit of this knowledge as well, and might easily give too much or too little weight to those now-contested convictions." 580 F.2d at 1350 (footnote omitted).