James C. YARBROUGH, Petitioner,

v.

Wayne ESTELLE, Warden, et al.,
Respondents.

No. C–86–5360–WWS.

United States District Court,
N.D. California.

Feb. 9, 1988.

A.J. Kramer, Asst. Federal Public Defender, San Francisco, Cal., for petitioner.

Ronald S. Matthias, D. Kenneth Barmgarten, Deputy Atty. Gen., San Francisco, Cal., for respondents.

## MEMORANDUM OF OPINION AND ORDER

SCHWARZER, District Judge.

Petitioner James Yarbrough petitions for habeas corpus relief under 28 U.S.C. § 2254, alleging that the failure of the sentencing judge to advise him of the parole term that attached to his sentence breached his plea agreement, rendered his plea unknowing and involuntary, and contravened state criminal procedure in violation of due process. Yarbrough, paroled following his first conviction and currently awaiting trial on new charges, seeks specific performance of the alleged plea agreement and relief from the parole term. Jurisdiction, venue, and exhaustion requirements are satisfied.

Yarbrough first filed this action on August 18, 1986. In its order of January 23, 1987, the Court subsequently dismissed without prejudice his claim of a breach of a plea bargain. While finding that Yarbrough stated cognizable claims, the Court deferred to the state trial court's conclusion that "petitioner was in fact advised as

to the possibility of parole" and held that there was no basis in the record for making an exception to the presumption of accuracy of state court findings. *See* 28 U.S.C. § 2254(d); *Marshall v. Lonberger*, 459 U.S. 422, 431–32, 103 S.Ct. 843, 849, 74 L.Ed.2d 646 (1983) (presumption applies to finding of voluntariness of guilty plea).

Yarbrough then amended his habeas petition. Liberally construed, the amended petition argued that (1) petitioner did not know about the parole term until after he was sentenced; (2) his plea was therefore not knowingly and voluntarily entered; (3) the addition of the parole term changed the terms of the plea agreement; (4) the addition of a significant additional period of effective state custody violated due process; (5) he would not have pled guilty had he known of the parole term; and (6) the court should order specific performance of the plea agreement.

In its order of March 17, 1987, the Court indicated that the petitioner's allegations that he was not informed of the parole term might rebut the presumption of correctness attaching to the state court finding and ordered service of his petition.

Following receipt of the state's answer and Yarbrough's reply, the Court on July 2, 1987, ordered that the matter be referred to a magistrate for an evidentiary hearing on whether the parole term breached the plea agreement and whether the plea was knowing and voluntary.

The magistrate submitted his findings and recommendation on November 5, 1987. The Court, having made an independent review of the record and the applicable law, reaches a different conclusion.

## FACTS

In 1986, Yarbrough faced numerous charges in San Francisco Municipal Court arising out of possession of firearms and drug paraphernalia and possession and sale of drugs. Under enhancements stemming from prior convictions, he was potentially subject to a maximum of 20–30 years in prison. His court-appointed attorney believed that maximum sentences were quite possible in light of Yarbrough's prior con-

victions (Reporter's Transcript of Evidentiary Hearing ("Tr.") at 31, lines (20)–(25)).

On January 28, 1986, Yarbrough reached a plea agreement with the San Francisco District Attorney's Office. Under the terms of that agreement, Yarbrough would plead guilty to two felony counts and receive a three-year prison term. (Tr. at 79, (16)–(19)). All other counts and enhancements would be dismissed. (Tr. at 77, (20)–(23).) The agreement was silent as to parole or the possibility of a parole-free release. (Tr. at 81, (5)–(19); 29, (12)–(24); 61, (21)–(25).) Neither Yarbrough nor his attorney recall discussing the subject during the plea negotiations. (Tr. at 15, (21)–(25); 16, (1)–(9); 37, (19)–(25).)

At the plea proceedings that day, Yarbrough's lawyer read to him from a standard form "Admonition of Rights," including a statement that they had discussed the legal consequences of a guilty plea and that upon release from prison he might be put on parole for three years. (Reporter's Transcript of Entry of Guilty Plea at 2, (16)–(28); Tr. at 59, (8)–(15).)

The relevant excerpts from the proceedings are as follows:

THE COURT: All right. That would be Action No. M64244. That's Line 2 on the calendar. And the other one would be Action No. M71787. That's Line 11 on the calendar, respectively.

MR. LEFF [Yarbrough's counsel]: I have told him that several Constitutional rights will be given up if the Court accepts this plea, including:

\* \* \* \* \* \*

We have discussed the elements of the charges against him and the possible defenses to the charges and I have advised him of the law as it relates to the facts of his case. I have advised him of the legal consequences of a guilty plea to the charge and that punishment for the offenses is two, three or four years for the 11379, and 16 months, two years or three years on the 12021 in State Prison.

*Upon his release from custody he may be placed on parole for a period of three years and he could be retained*

*under parole supervision or in custody for a period of four years from the date of his initial parole.* However, if parole is revoked confinement pursuant to a revocation of parole shall not exceed 12 months.

\* \* \* \* \* \*

THE COURT: You have heard the statements made to the Court by your counsel.

THE DEFENDANT: Yes, sir.

THE COURT: Are they true in all respects?

THE DEFENDANT: Yes, sir.

(Hearing of Jan. 28, 1986, pp. 2–4, emphasis added)

The court accepted the plea after finding that defendant "entered both pleas of guilty well knowing the consequences of those pleas." *Id.* at 6. The court made the same finding at the sentencing hearing on February 25, 1986.

At the evidentiary hearing in this proceeding, Yarbrough testified in relevant part as follows:

Q. Were you paying attention on January 28, 1986 when the form was read to you?

A. I was paying attention.

Q. So you heard all of that; is that correct?

A. I heard him read that, the form on the desk, yes.

Q. You heard your attorney tell you that upon release from custody you would serve—you may serve a period of parole of up to three years; is that correct?

A. I heard him say that—this was broached to me as a possibility. I might. I may. Anything may be possible. But I knew what I was going to get because I already discussed it with him in the back. I had discussed three years.

Q. It is your testimony that you heard him say that in municipal court?

A. I heard him when he read the form on the podium, yes.

(Tr. at 47, (10)–(24))

## DISCUSSION

The determinative issue before the Court is whether the decision in *Carter v. McCarthy,* 806 F.2d 1373 (9th Cir.1986), *cert. denied,* —— U.S. ——, 108 S.Ct. 198, 98 L.Ed. 2d 149 (1987), controls the disposition of this case and requires that the petition be granted.

Petitioner there, having entered a guilty plea, was subject to Cal.Penal Code § 3000(a), as was Yarbrough here. That section provides for the mandatory imposition upon release of a parole term "not exceeding three years, unless [waived by the Board of Prison Terms]." In *Carter,* following an evidentiary hearing, the magistrate recommended granting habeas relief and the district court accepted the recommendation. The court of appeals applied a clearly erroneous standard in reviewing the decision.

The court did not see fit to give readers of its opinion the benefit of stating the facts in that case, except to say that "the magistrate specifically found that Carter did not know of the requirement of a mandatory parole term." 806 F.2d at 1376. It went on to say, without explanation, that "[w]hile on the basis of the written record [it] might not have reached the same conclusion as the magistrate and the district court" it would not substitute its judgment under the circumstances. *Id.*

 In this case, the record, without dispute, establishes that Yarbrough knew of the possibility of a parole term following release; he was so advised and he heard that advice.[1] It is argued that his attorney's statement that he *"may* be placed on parole for a period of three years" failed fully to convey the mandatory nature of the provision. But section 3000 only makes the imposition of *a* parole term mandatory, *unless* waived by the Board. It does not make a three-year term mandatory. The admonition given to Yarbrough, when in-

---

1. The fact that he was advised by his attorney on the record in the presence of the judge, rather than by the judge himself as required by Cal.Penal Code § 1170(c), does not affect the critical determination of whether Yarbrough knew the penal consequences of his plea.

terpreted in the way an ordinary person would understand it, informed him of the potential maximum penal consequences he faced in addition to his sentence. The language used by his attorney conforms to that generally used in the course of taking a plea to advise defendants of the maximum penalty that may be imposed ("you may be sentenced to a term of ____ years").

*Carter*, in which the defendant did not know of the mandatory parole term, therefore does not apply here.[2] Yarbrough knew of the penal consequences of his plea, including the possibility of a parole term. That is sufficient to make his plea voluntary and intelligent.

The foregoing conclusion disposes as well of the contention that imposition of the parole term was a breach of the plea bargain.

■ Contract law analysis governs judicial review of the performance of plea agreements. *Santobello v. New York*, 404 U.S. 257, 92 S.Ct. 495, 30 L.Ed.2d 427 (1971). In determining whether a plea agreement has been breached, the Court looks to what was " 'reasonably understood by [the defendant] when he entered his plea of guilty.' " *United States v. Arnett*, 628 F.2d 1162, 1164 (9th Cir.1979) (quoting *United States v. Crusco*, 536 F.2d 21, 27 (3d Cir.1976)). "If disputed, the terms of the agreement will be determined by objective standards." *Arnett*, 628 F.2d at 1164. A petitioner bears the burden of proving by a preponderance of the evidence the facts which he alleges entitle him to relief. *Bellew v. Gunn*, 532 F.2d 1288, 1290 (9th Cir.), *cert. denied*, 428 U.S. 953, 96 S.Ct. 3180, 49 L.Ed.2d 1192 (1976).

■ In the present case, the plea bargain was silent as to any parole term. The most that can be said of the plea bargain is that on the basis of the negotiations alone, Yarbrough had no reason to expect the imposition of a parole term following the bargained-for three-year sentence. But be-

fore he entered his plea, he was told that that sentence might be extended by up to three years of parole. He entered his plea fully informed of the conditions to which he was pleading. Yarbrough has not demonstrated that the prosecution did anything contrary to the representations on the basis of which the plea was entered. On the facts presented, therefore, there was no breach.

For the reasons stated, the petition must be denied.

IT IS SO ORDERED.

**2.** It should be noted that the Carter court, following the Seventh Circuit in *Baker v. Finkbeiner*, 551 F.2d 180 (1977), described that case as "almost identical," stating that "[defendant's] attorney, the prosecutor and the trial judge all failed to inform him [of a mandatory parole term]." 806 F.2d at 1375 n. 1.