**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

UNITED STATES OF AMERICA,
            *Plaintiff-Appellee,*

v.

PATRICIA BETTERMAN PAUL,
            *Defendant-Appellant.*

No. 08-30125

D.C. No.
4:05-cr-00167-SEH

OPINION

Appeal from the United States District Court
for the District of Montana
Sam E. Haddon, District Judge, Presiding

Submitted September 5, 2008*
Pasadena, California

Filed April 2, 2009

Before: Stephen Reinhardt, Cynthia Holcomb Hall and
Milan D. Smith, Jr., Circuit Judges.

Per Curiam Opinion;
Dissent by Judge Hall

*The panel unanimously finds this case suitable for decision without oral argument. *See* Fed. R. App. P. 34(a)(2).

3947

## COUNSEL

Anthony R. Gallagher, Michael Donahoe, Federal Defenders of Montana, Helena, Montana, for the defendant-appellant.

William w. Mercer, Carl E. Rostad, United States Attorney's Office, Great Falls, Montana, for the plaintiff-appellee.

## OPINION

PER CURIAM:

In *United States v. Paul*, 239 Fed. App'x 353 (9th Cir. 2007) (*Paul I*), we held that a 16-month sentence imposed on Patricia Betterman Paul for theft from a local government receiving federal funding, a violation of 18 U.S.C. § 666(a)(1)(A), was unreasonable. *Id.* at 354. We viewed her case as one that did not fall within the "heartland" of cases to which the Federal Sentencing Guidelines are most applicable, as contemplated by *Rita v. United States*, 551 U.S. 338, 127 S. Ct. 2456, 2465 (2007) (a court may decide "that the Guidelines sentence should not apply, perhaps because . . . the case at hand falls outside the 'heartland' to which the Commission intends individual Guidelines to apply"); *cf. United States v. Mohamed*, 459 F.3d 979, 987 (9th Cir. 2006) ("any post-Booker decision" as to whether a case falls within the heartland "is subject to a unitary review for reasonableness"), and allowed by *Gall v. United States*, ___ U.S. ___, 128 S. Ct. 586, 595 (2007) (rejecting "an appellate rule that requires 'extraordinary' circumstances to justify a sentence outside the

Guidelines range"). We vacated the sentence and remanded for resentencing, pointing to four specific mitigating factors that demonstrated the 16-month sentence was unreasonably high. Paul now appeals the subsequent sentence of 15 months that the district court imposed upon remand. This case presents the question whether a district court can disregard the spirit and express instructions of an appellate court's mandate to reconsider an unreasonable sentence. We once more vacate Paul's sentence, and remand to a different judge for resentencing.

## Factual and Procedural Background

Paul was convicted by jury verdict for misappropriation of federal program funds under 18 U.S.C. § 666(a)(1)(A), and originally sentenced by the district court on this conviction to 16 months in prison. Paul appealed to this Court, raising multiple issues and appealing both the conviction and the sentence. Paul prevailed on the latter but not on the former. We held, in an unpublished memorandum disposition, that her sentence was substantively unreasonable. We determined that the district court did not adequately take into consideration numerous factors that demonstrated that the 16-month sentence was unreasonably high: (a) that Paul was a first-time offender with no criminal record whatsoever; (b) that she promptly returned all of the funds to the school district; (c) that she displayed remorse in two statements given to the Department of Labor prior to the filing of criminal charges; and (d) that she believed that the misappropriated funds represented compensation for work that she had performed for the district. We held that "[t]he district court did not adequately consider this strong mitigating evidence in sentencing Paul to the very top of the guidelines range," and thus, the sentence was unreasonable. *Paul*, 239 Fed. App'x at 354-55. The panel vacated and remanded for resentencing, and the United States did not file a petition for rehearing.

On remand, the United States argued to the district court that the "Circuit's factual conclusions were, in significant

part, flawed and unsupported by the record" and that the "original sentence was not unreasonable." The district court agreed, and while acknowledging this Court's declaration that Paul's original sentence was unreasonable, it determined that it was "totally satisfied that a sentence at the upper end of [the] guideline range would not only be reasonable, but that it would meet all of the current law criteria." The district court then sentenced Paul to a 15-month prison term, removing one month from its original sentence that was declared unreasonable by this Court. Paul now appeals, claiming that the district court violated the rule of mandate by failing to credit the mitigating evidence that it was specifically directed to take into consideration.

## Jurisdiction and Standard of Review

The district court had subject matter jurisdiction to resentence Appellant under 18 U.S.C. § 3742(g). We review de novo a district court's compliance with a mandate. *United States v. Kellington*, 217 F.3d 1084, 1092 (9th Cir. 2000).

## Discussion

[1] We vacate the district court's reimposition of a sentence at the top of the Guidelines range because it flouts our prior mandate. The language in our prior disposition is clear:

> Paul's 16-month sentence is unreasonable. Several factors that are absent from the district court's sentencing analysis demonstrate that this case does not fall within the "heartland" of cases to which the guidelines are most applicable . . . . All of the following facts demonstrate that a 16-month sentence was unreasonably high: Paul was a first-time offender with absolutely no criminal record whatsoever; she promptly returned all of the funds to the school district; she displayed remorse in two statements given to the Department of Labor prior to the

> filing of criminal charges; and the misappropriated funds represented compensation for work that she had performed for the district. The district court did not adequately consider this strong mitigating evidence in sentencing Paul to the very top of the guidelines range. Accordingly, we vacate Paul's 16-month sentence and remand with instructions for the district court to resentence Paul after giving appropriate consideration to the above-mentioned factors.

*Paul*, 239 Fed. App'x at 354-55. Nonetheless, on remand, the district court imposed a nearly identical sentence on Paul, removing only one month from the original top of the Guidelines sentence. In doing so, the district court was in violation of both the spirit and express instructions of our mandate. *See Cassatt v. Stewart*, 406 F.3d 614, 621 (9th Cir. 2005) (holding that a lower court may deviate from mandate only if it is "not counter to the spirit of the circuit court's decision").

**[2]** Further, the district court did not impose the new sentence because of any new information submitted after the imposition of the sentence that was the subject of the prior appeal, nor because intervening authority made reconsideration appropriate.[1] *See Lindy Pen Co. v. Bic Pen Corp.*, 982 F. 2d 1400, 1404 (9th Cir. 1993) ("The law of the case controls unless evidence on remand is substantially different from that presented in previous proceedings."). The district court primarily relied upon the reasoning and justifications that we declared insufficient in our prior disposition. Specifically, the district court focused heavily on Appellant's abuse of trust, as it did in the first sentencing, and omitted any meaningful consideration of the other factors which our mandate directed it to give appropriate consideration.

---

[1] If the United States had believed, as it claimed in its argument to the district court at resentencing, that *Paul I*'s factual conclusions were flawed and unsupported by the record, it should have argued as much in a petition for rehearing. The district court was not at liberty to re-determine what this Court had previously determined.

Further, contrary to the dissent's assessment, no intervening case law made reconsideration appropriate in this case. In our prior disposition, we held that Paul's sentence was unreasonable.[2] Review for "unreasonableness" amounts to review for abuse of discretion. *See Gall,* 128 S. Ct. at 594 ("Our explanation of 'reasonableness' review in the *Booker* opinion made it pellucidly clear that the familiar abuse-of-discretion standard of review now applies to appellate review of sentencing decisions."); *Kimbrough v. United States*, ___ U.S. ___, 128 S. Ct. 558, 576 (2007) ("The ultimate question . . . is 'whether the sentence was reasonable- i.e., whether the District Judge abused his discretion.' ").

**[3]** While it is true that more recent cases *Gall v. United States*, 128 S. Ct. 586, and *United States v. Carty*, 520 F. 3d 984 (9th Cir. 2008) (en banc) reiterate the holding of *United States v. Booker*, 543 U.S. 220, 246 (2005), that a sentence is reviewed for reasonableness under an abuse of discretion standard, this standard was clearly established when we issued our prior holding — notably so in *Rita v. United States*, a case on which we explicitly relied, *see* 127 S. Ct. at 2465 (" '[R]easonableness' review merely asks whether the trial court abused its discretion."). While each of these subsequent cases has added nuance to our review of district court sentenc-

---

[2]No one contends that the original sentence was procedurally invalid. *Cf. Gall,* 128 S. Ct. at 596-97; *United States v. Carty*, 520 F. 3d 984, 992-93 (9th Cir. 2008) (en banc). Thus, the only question is whether cases issued after *Rita v. United States*, 551 U.S. 338, 127 S. Ct. 2456, have changed the law with respect to reasonableness review so as to justify the district court's departure from this court's mandate. The dissent argues that "reasonableness review in our circuit . . . . focuse[s] on whether the district court adequately explained the basis of its sentence . . . and whether the court considered the defendant's arguments." Dissenting Op. at 3969-70 n.8. This is simply incorrect. As this Court recently held in an en banc decision, "[i]t would be *procedural* error for a district court . . . to fail adequately to explain the sentence selected." *Carty*, 520 F.3d at 993 (emphasis added). It is the procedural provisions of 18 U.S.C. § 3553(c) that require engagement with the defendant's arguments, *see Rita* 127 S. Ct. at 2468-2469, not the substantive provisions of 18 U.S.C. § 3553(a).

ing, the basic tenet of our prior holding in *Paul I* — that this is not a case that falls within the "heartland" of cases to which the Guidelines are applicable — remains good law. District courts are clearly vested with considerable discretion at sentencing. *See United States v. Whitehead*, 532 F.3d 991, 993 (9th Cir. 2008). However, this discretion does not authorize the district court to trespass beyond boundaries established by this Court in a previous appeal.[3]

Here, following the mandate laid out in *Paul I* would not have required the district court to render an illegal sentence. *Cf. United States v. Bad Marriage II*, 439 F.3d 534, 538 (noting that *Booker* was intervening case law that allowed for reconsideration of a mandate, as imposing a sentence pursuant to a mandatory sentencing regime would be illegal). Nothing in *Gall, Kimbrough,* or *Carty* so undermines the legal analysis in *Paul I* so as to allow the district court to deviate from our mandate. There is no merit to the suggestion that there have been intervening changes in the law of sentencing that permit us to abandon the law of the case established in our prior disposition.

**[4]** On remand, the district court did precisely what the *Paul I* disposition rejected; specifically, it relied excessively

---

[3]Further, *Carty* explicitly declined to adopt an appellate presumption of reasonableness for within Guidelines sentences, such as Paul's. *Carty,* 520 F. 3d at 994. Subsequent cases have held that " '[T]he Guidelines factor [may not] be given more or less weight than any other.' So while the Guidelines are the 'starting point and initial benchmark' and must 'be kept in mind throughout the [sentencing] process,' the Guidelines range constitutes only a touch-stone in the district court's sentencing considerations." *United States v. Autery,* 555 F.3d 864, 872 (9th Cir. 2009)(citations omitted). The dissent's extended discussion of the Guidelines provisions misunderstands their function post *Booker.* Contrary to the dissent's view they simply constitute one factor, albeit the factor from which a sentencing court's analysis must start in determining a sentence that must be reasonable under the provisions of 18 U.S.C. § 3553(a). *Compare Mohamed*, 459 F.3d at 987, *and United States v. Tankersley*, 537 F.3d 1100, 1113-14 & n.11 (9th Cir. 2008), *with* Dissenting Op. at 3960-62.

upon defendant's abuse of trust while not giving sufficient consideration to other factors. Absent either new information or intervening case law, the district court was required to follow the principles announced in our prior disposition. As neither of these exceptions apply in this case, our mandate must be followed. Accordingly, we vacate and remand for resentencing, with instructions that in imposing the new sentence the district court take into consideration both the mitigating factors discussed in our previous disposition and our conclusion "that this case does not fall within the 'heartland' of cases to which the guidelines are most applicable." *Paul*, 239 Fed. App'x at 354.

We also grant the request to remand this matter to a different district judge. Remand to a new judge is reserved for "unusual circumstances." *United States v. Arnett,* 628 F.2d 1162, 1165 (9th Cir. 1987). To determine whether "unusual circumstances" exist, the court considers: (1) whether the original judge would reasonably be expected upon remand to have substantial difficulty in putting out of his or her mind previously expressed views or findings determined to be erroneous or based on evidence that must be rejected, (2) whether reassignment is advisable to preserve the appearance of justice, and (3) whether reassignment would entail waste and duplication out of proportion to any gain in preserving the appearance of fairness. *Smith v. Mulvaney*, 827 F.2d 558, 562-63 (9th Cir. 1987).

**[5]** In this situation, we believe that the appearance of justice will be best preserved by remanding to a different judge. While the district judge on remand explained some of the reasoning behind his resentencing of Paul, he clearly did not put out of his mind his previously expressed view that the Appellant's abuse of trust trumped all other mitigating factors combined, as shown by the fact that he again sentenced Paul to a prison sentence at the top of the Guidelines range. We have little faith that Judge Haddon would be able to do so on remand this time either. We conclude that reassignment will

best preserve the appearance of justice in this case. We do not believe that resentencing by another judge would entail waste and duplication out of proportion to the gain achieved in preserving an appearance of fairness, as a new sentencing hearing will be required whether the case is reassigned or remains with Judge Haddon. The sentence is vacated, and the case is remanded to the district court for resentencing by a new judge.

**SENTENCE VACATED; REMANDED FOR RESENTENCING BY A NEW JUDGE.**

---

HALL, Circuit Judge, dissenting:

Under the guise of the rule of mandate, the majority seeks to insulate this court's previous unpublished disposition from intervening Supreme Court and Ninth Circuit precedent. In so doing, the majority demonstrates a complete disregard for the appropriate roles of the sentencing judge and the appellate court. As we stated in *United States v. Whitehead*, "[o]ne theme runs though the Supreme Court's recent sentencing decisions: empowered district courts, not appellate courts . . . and breathed life into the authority of district court judges to engage in individualized sentencing." 532 F.3d 991, 993 (*citing United States v. Vonner*, 516 F.3d 382, 392 (6th Cir. 2008) (*en banc*). "Even if we are certain that we would have imposed a different sentence had we worn the district judge's robe, we can't reverse on that basis." *Id.* at 993 (*citing Gall v. United States*, 128 S.Ct. 586, 597 (2007)). Here, the majority relies on a scant one-paragraph section of an unpublished disposition, unsupported by any analysis, and decided without the benefit of the subsequent decisions in *Gall*, *Kimbrough*, and *Carty*, to do just that. *See Gall*, 128 S. Ct. 586; *Kimbrough v. United States*, 128 S. Ct. 558 (2007); *United States v. Carty*, 520 F.3d 984 (2008). I respectfully dissent.

Unlike the majority, I neither conclude that the district court violated our mandate nor believe that the mandate survived *Carty*. The district court first sentenced Paul in September 2006, after the *Booker* decision, but before the Supreme Court clarified sentencing law through its *Rita*, *Gall*, and *Kimbrough* decisions. Our Ninth Circuit sentencing framework was rather fluid at that point, with most sentencing cases stayed pending our decision in *Carty*. It was in this turbulent environment that we decided *Paul I*, just one month after the Court's decision in *Rita* was announced. The majority is correct that our disposition relied upon *Rita* and cited several factors that suggested the case did not fall within the "heartland" of cases. *See Rita v. United States*, 127 S. Ct. 2456, 2465 (2007). The majority and I differ, however, on whether the district court complied with our mandate to "resentence Paul after giving appropriate consideration to the above-mentioned factors."

The majority correctly asserts that compliance with the terms of a mandate is reviewed *de novo*. *United States v. Kellington*, 217 (F.3d 1084, 1092 (9th Cir. 2000). District courts are "free [to decide] as to anything not foreclosed by the mandate, and, under certain circumstances, an order issued after remand may deviate from the mandate if it is not counter to the spirit of the circuit court's decision." *Id.* at 1092-1093 (internal citations omitted). *Kellington* reiterated the Supreme Court's holding in *In re Sanford Fork & Tool Co.*, that "in addition to the mandate itself, the opinion by this court at the time of rendering its decree may be consulted to ascertain what was intended by its mandate," and "in determining what was heard and decided by the appellate court, bear[ing] in mind the settled practice of courts with respect to the applicable substantive law." *Id.* at 1093 (*citing In re Sanford Fork & Tool Co.*, 160 U.S. 247, 256 (1895)). Thus, the district court is free to evaluate our entire opinion, the procedural posture of the case, and substantive sentencing law in construing our mandate. *Id.* at 1093.

In *Kellington*, this court found that the district court complied with at least the spirit of the mandate to "reverse entry of acquittal and remand for entry of judgment and for sentencing" by reversing entry of acquittal and granting defendant's motion for a new trial. *Id.* at 1095. The previous unpublished memorandum disposition, though including strong language supporting the jury's determination of guilt, did not specifically address the defendant's motion for retrial. As such, the procedural posture differed and consideration of the motion was not foreclosed by the mandate. In so holding, the panel dismissed the "dissent's view, that a district court must always woodenly follow the strict terms of mandate" as "squar[ing] neither with the Supreme (Court . . . nor our precedent," which has upheld remands "*despite the plain terms of the mandate.*" *Id.* at 1095 (emphasis in original).

In *Lindy Pen Co. v. Bic Pen Corp.*, we upheld the district court's ultimate denial of an accounting and damages award despite a prior mandate "instruct[ing] the district court to order an accounting and to award damages and other relief as appropriate." 982 F.2d 1400, 1404 (9th Cir. 1993). The court stated that the "district court must be given a meaningful opportunity to follow the directive of the circuit court in resolving the issues." *Id.* Because the underlying determination was equitable in nature, the district court was in a better position to undertake "additional discovery and argument prior to ordering an accounting," and so the ultimate determination that "an accounting was not appropriate under the circumstances of the case" was in compliance with the mandate and reviewed only under an abuse of discretion standard. *Id.* at 1405.

Similarly, the district court here was in a better position, both procedurally and under substantive sentencing law to make the ultimate determination of whether mitigation "was . . . appropriate under the circumstances of the case." *Id.*

To better understand the district court's position in applying *Paul I*, it is useful to walk through the steps required

under current sentencing law had the district court chosen to depart from the Guidelines in the first instance, based on the factors we identified. "[D]istrict courts must begin their analysis with the Guidelines and remain cognizant of them throughout the sentencing process." *Gall*, 128 S. Ct. at 597, n. 6. This is because, "[w]hile rendering the Sentencing Guidelines advisory, [the Supreme Court has] nevertheless preserved a key role for the Sentencing Commission." *Kimbrough*, 128 S. Ct. at 574. As *Carty* reiterates, "*Rita* suggests the parties could argue that the Guidelines sentence should not apply 'perhaps because (as the Guidelines themselves foresee) the case at hand falls outside the 'heartland' to which the Commission intend individual Guidelines to apply, USSG § 5K2.0 . . . ." *United States v. Carty*, 520 F.3d 984, 991 (9th Cir. 2008) (*en banc*) (*citing Rita*, 127 S. Ct. at 2465) (further elaborating that this change is to allow departure by *sentencing* judges and to facilitate "thorough adversarial testing" of sentencing decisions). The consideration of whether the factors argued suffice to take a case out of the "heartland" is a factual matter for the *district court* to decide. *Koon v. United States*, 518 U.S. 81, 99-100 (1996); *see also Gall*, 128 S. Ct. at 597.

Turning first to the Guidelines, and specifically USSG § 5K2.0, which governs departures from the Guidelines "heartland," the district court would: (1) make a factual determination of whether each factor merited a departure; and (2) was a permissible basis for departure. Section 5K2.0(d) lists six circumstances which the Sentencing Commission has determined to be *prohibited* bases for departure. Of those six, three are pertinent to this case:

> (2)   The defendant's acceptance of responsibility for the offense, which may be taken into account only under 3E1.1 (Acceptance of Responsibility).

> (5)   The defendant's fulfillment of restitution obligations only to the extent required by law . . . .

(6)   Any other circumstance specifically prohibited as a ground for departure in the guidelines.

USSG § 5K2.0(d).

The first circumstance listed in *Paul I* is that "Paul was a first-time offender with absolutely no criminal history record whatsoever." *United States v. Paul*, 239 Fed. Appx. 353 (9th Cir. 2007) (*Paul I*). Turning to USSG § 4A1.3(b)(2)(A) (Departures Based on Inadequacy of Criminal History Category), the Guidelines prohibit "departure below the lower limit of the applicable guideline range for Criminal History Category I." Because this is a prohibited ground of departure, it also implicates the prohibition of § 5K2.0(d)(6). If the district court found Paul's lack of criminal history sufficiently compelling to justify departure, then, it would have to do so on the basis of the advisory nature of the Guidelines post-*Booker*.

The second circumstance is that Paul "promptly returned all of the funds to the school district." *Paul I*, 239 Fed. Appx. at 354. Here, the district court would first need to make the factual determination whether or not Paul's return of the funds, 22 months after they were first taken, but shortly after her indictment, constituted a "prompt" return. If the sentencing judge did make this determination, a departure based on this circumstance is only allowed because the Guidelines are advisory post-*Booker*. Payment of restitution only as otherwise required by law is an impermissible basis for departure from the "heartland." USSG § 5K2.0(d)(5).

The third circumstance is that Paul "displayed remorse in two statements given to the Department of Labor prior to the filing of criminal charges." *Paul I*, 239 Fed. Appx. at 354-355. A display of remorse is akin to acceptance of responsibility for the offense. First, the district court would need to make the factual determination whether or not the two statements qualified as displays of remorse or acceptance of

responsibility. If so determined, under the terms of § 5K2.0(d)(2), the district court would be prevented from departing from the "heartland" on this basis and would instead be limited to a decrease in the initial Guidelines calculation according to the terms of USSG § 3E1.1. According to the Presentence Report, Paul was ineligible for this reduction in offense level because it is "not intended to apply to a defendant who puts the government to its burden of proof at trial by denying the essential factual elements of guilt . . . ," and Paul went to trial twice before appealing her conviction. § 3E1.1, n. 2.[1] Again, the court would need to rely on the advisory nature of the Guidelines to depart from the calculated range.

The final circumstance noted in *Paul I* is that "the misappropriated funds represented compensation for work that she had performed for the district." *Paul I*, 239 Fed. Appx. at 355. The district court would be unable to depart on this basis. An essential element of Paul's conviction is that the funds did not represent "bona fide salary, wages, fees, or other compensation paid." 18 U.S.C. § 666(c). The jury made this factual determination and it is not within the realm of the sentencing judge's discretion to disturb it through its sentencing decision.[2] *See United States v. Hunt*, 521 F.3d 636, 649 (6th Cir. 2008). If the district court instead evaluated the factor as applying only to Paul's *subjective belief* that she was entitled to compensation, and made the appropriate factual and credibility determinations to support this factor, it could depart from the now-advisory Guidelines if reasonably tied to a 3553(a) factor. *See Gall*, 128 S. Ct. at 597.[3]

---

[1]It is useful to note that the initial Guidelines calculation in this case has never been objected to or otherwise challenged by Paul.

[2]The Montana Department of Labor also concluded that Paul was not entitled to overtime compensation, prior to her federal indictment.

[3]While the majority claims that this discussion misunderstands the function of the Guidelines post-*Booker*, *see Opinion* at n. 3, I am not suggesting that an appellate review of the sentence would be reviewed for

Because the factors prescribed in *Paul I* are prohibited bases of departure under the Guideline applicable to departure itself, § 5K2.0, Paul's case is not one of those "particular case[s] outside the 'heartland' to which the Commission intends individual Guidelines to apply." *Kimbrough*, 128 S. Ct. at 575 (citing *Rita*, 127 S. Ct. at 2465). Instead, unlike circumstances unanticipated by the "heartland" of cases, the Guidelines squarely contemplate first-time offenders, payment of restitution, and displays of remorse. The Guidelines simply reflect the Sentencing Commission's views that they are impermissible bases for departure. In this situation, where the sentencing judge "varies from the Guidelines based solely on the judge's view that the Guidelines range fails properly to reflect § 3553(a) considerations," *Kimbrough* makes clear that a sentencing court must provide a reasoned appraisal tying the variance to the § 3553(a) factors, which is subject to "closer review" than those variances based on circumstances not contemplated by the Guidelines. 128 S. Ct. at 574-575.

The Supreme Court has made abundantly clear that:

> The sentencing judge is in a superior position to find facts and judge their import under § 3553(a) in the individual case. The judge sees and hears the evidence, makes credibility determinations, has full knowledge of the facts and gains insights not conveyed by the record. The sentencing judge has access to, and greater familiarity with, the individual

---

anything other than reasonableness. Rather, *Paul I* stated that "this case does not fall within the "heartland" of cases to which the guidelines are most applicable, as described by the Supreme Court in *Rita v. United States*, 127 S. Ct. 2456, 2465 (2007)." *Paul I*, 239 Fed. Appx. at 354. In turn, *Rita* referenced § 5K2.0 as the Guideline applicable to determining whether a case falls outside the "heartland" of cases the Guidelines foresaw. *Rita*, 127 S. Ct. at 2465. It would, thus, be natural for the district court, upon receiving our disposition in *Paul I*, to turn to the Guideline applicable to determining if a case falls outside the "heartland."

case and the individual defendant before him than the Commission or the appeals court. Moreover, district courts have an institutional advantage over appellate courts in making these sorts of determinations, especially as they see so many more Guidelines sentences than appellate courts do.

*Gall*, 128 S. Ct. at 597-598 (internal quotations and citations omitted). When the district court received our decision in *Paul I*, it was appropriate for the court to "bear in mind the settled practice of courts with respect to the applicable substantive [sentencing] law," including the district court's role as fact-finder, when attempting "to ascertain what was intended by [our] mandate." *Kellington*, 217 F.3d at 1093 (*citing Sanford*, 160 U.S. at 256).

While our prior decision listed four factors which were not given "appropriate consideration," it did not analyze any of the factors. The disposition did not find that the district court had clearly erred in making any factual determinations, particularly those factual determinations required to determine whether a factor is present or sufficiently strong to justify departure from the Guidelines range. *See Koon*, 518 U.S. at 99-100; *Gall*, 128 S. Ct. at 597-598. Indeed, as to Paul's displays of remorse in her statements to the Montana Department of Labor, the district court had not previously considered this factor at all. Paul did not argue that this factor was mitigating in her original sentencing,[4] and argued in her original briefing to this court in *Paul I* that "in terms of admitting the components of a crime there is no confession."[5] Most importantly,

---

[4] Deciding this factor outright would have been inappropriate, as the parties did not argue the issue in *Paul I. See United States v. Cruz*, 554 F.3d 840, 848 (9th Cir. 2009) (citing "our longstanding general rule that we will not decide questions not raised by the parties before us").

[5] To the extent the majority expected the district court to "woodenly follow," *Kellington*, 217 F.3d at 1095, as settled facts *Paul I*'s four factors, engaging in such factual determinations would be beyond our role as an appellate court. If such were the situation, I respectfully submit that we should find that our prior disposition was clearly erroneous and refuse to apply the law of the case doctrine on this review. *See United States v. Lummi Indian Tribe*, 235 F.3d 443, 452-453 (9th Cir. 2000).

our disposition did not explain how any of the factors tied to a § 3553(a) factor and justified departure from the Guideline range. Our disposition certainly did not justify the departure sufficiently to survive the "closer review" standard dictated by the Supreme Court when the departure is based on a mere disagreement with the Sentencing Commission's weight assigned to a factor in the Guidelines. *See Kimbrough*, 128 S. Ct. at 574-575. And, as the Supreme Court faulted the appellate court in *Gall* for doing, our disposition "made no attempt to quantify the strength of any of the mitigating circumstances," 128 S.Ct. at 596, n.5, beyond a statement that "[t]he district court did not adequately consider this strong mitigating evidence in sentencing Paul to the *very top* of the guidelines range." (emphasis added).

Faced with the first decision holding a within-Guideline sentence unreasonable, a dearth of guidance as to why the factors justified departure, or how much weight to afford the factors, the district court complied with our mandate by "giving appropriate consideration" to the factors upon resentencing. The district court deferred resentencing Paul until after the decision in *Carty* was announced so that it would have a "substantive checklist of procedures . . . to follow." The district court expressed its understanding that the "matter is before the court for resentencing," and noted its intention to "address each and all" of the "separately-stated reasons specifically set forth for the conclusion that the circuit drew." As in *Lindy Pen*, the district court satisfied the terms of the mandate by allowing Paul "the opportunity" to show the factors should be mitigating. 982 F.2d at 1407. This opportunity allowed the "adversarial process," contemplated by *Rita*, to function properly. *See Rita*, 127 S.Ct. at 2465.

"[T]he sentencing judge 'set forth [more] than enough to satisfy us that he has considered the parties' arguments and has a reasoned basis for exercising his own legal decision-making authority.' " *Carty*, 520 F.3d at 996 (*citing Rita*, 127 S.Ct. at 2468). Even when a "party raises specific, non-

frivolous argument [including those set forth in our *Paul I* mandate] tethered to a relevant § 3553(a) factor . . . the district court does not abuse its discretion when it listens to the defendant's arguments and then 'simply finds those circumstances insufficient (to warrant a sentence lower than the Guidelines range.' " *United States v. Stoterau*, 524 F.3d 988, 999 (9th Cir. 2008) (*citing Carty*, 520 F.3d at 995). Rather than simply listening to Paul's arguments, however, the district court engaged in a very thorough sentencing hearing, including discussions of the factors mentioned in *Paul I* and each of the § 3553(a) factors.[6]

---

[6]For example, though the district court sentencing transcript spanned 36 pages, below is a sample of how the district court addressed the factors presented in *Paul I*.

*First-time offender*: "I have taken note of the circuit's observation that you had no criminal history, and I have fully evaluated that as part of this guideline calculation. But that does not end the analysis, because I am obliged to consider these matters under your characteristics under 3553(a)." The district court then went on to state that this factor was outweighed by the seriousness of the conduct, "because this is more than simply taking money from a vulnerable victim," noting the dire financial straights of the Native American school district and that public money was stolen.

*Prompt return of the funds*: The district court discussed the time line of Paul's return of the funds, noting that Paul only returned the amount she was otherwise responsible to pay under the law nearly two years after the funds were taken, and only after her claim of compensation had been denied, her counsel recommended she return the funds, and trial was imminent.

*Funds represented compensation for work performed*: The district court noted that Paul was hired on a salary basis with no right to overtime pay, that both the State of Montana and the jury had determined she was not entitled to compensation, and that Paul felt sorry for herself, but her belief she could make the situation "entirely right by simply paying the money back" was not the way the law worked.

*Displays of remorse*: The district court, after announcing its sentence, stated on the record "these matters you have raised have been fully considered by this court . . . and I find them to be without significant weight in this assessment process as to whether your client has [taken] full responsibility for what she did."

The district court issued a sentence within the Guideline range, and lower than the sentence previously vacated. The 15-month sentence represented a sentence only 12.5% of the 10-year statutory maximum, and was no longer at the "very top" of the 10-16 month Guideline range. The majority is correct in stating that the district court focused heavily on Paul's abuse of trust. The district court was troubled by Paul's deliberate actions in stealing funds from a near-bankrupt Native American school district. The court's reasoning was tied not only to relevant § 3553(a) factors, however, but also to the Sentencing Commission's recommendation, based on "empirical data and national experience, guided by a professional staff with appropriate expertise," *Kimbrough*, 128 S. Ct. at 574 (citation omitted), that "if the defendant abused a position of public or private trust," the offense level should be increased. USSG § 3B1.3.[7] The district court complied with our mandate and imposed a reasonable sentence.

Perhaps most prescient to this case is the well-founded exception to the rule of mandate, and law of the case, which allows ("intervening controlling authority [to] displac[e] prior law of the case." *United States v. Bad Marriage*, 439 F.3d 534, 538 (9th Cir. 2006) (upholding longer sentence imposed post-*Booker*, after issuing prior mandate that upward departure was not justified by (the facts); *accord United States v. Williams*, 517 F.3d 801, 807 ((5th Cir. 2008) (upholding resentencing decision because *Booker* and *Gall* were intervening controlling authority displacing the prior mandate and the district court satisfied abuse of discretion standard by fully applying the § 3553 factors). Since *Paul I*, the Supreme Court has altered sentencing law in *Gall* and *Kimbrough*, and *Carty* established the proper procedure for reviewing such challenges in our circuit. Like *Booker*, these cases altered both the

---

[7]*Paul I* provided no guidance to the district court on this factor. Our prior disposition neither instructed the district court that this factor was improper nor explained why Paul's abuse of trust did not justify a within-Guidelines sentence.

district and appellate courts' approach to sentencing deci-
sions.

Although the majority claims that sentencing law has not
changed because *Booker* established the abuse of discretion
standard, this position in untenable. In *United States v. Cav-
era*, 550 F.3d 180 (2d Cir. 2008) (*en banc*) the Second Circuit
recently reversed a decision holding a sentence unreasonable,
finding that *Gall* and *Kimbrough* were intervening controlling
authority. Writing for the court, Judge Calabresi noted that
until the Supreme Court provided further guidance in *Gall*
and *Kimbrough*, appellate courts were unaware to what extent
they should defer to district courts, and now the "Supreme
Court has suggested that the 'unreasonableness' standard is a
particularly deferential form of abuse-of-discretion review."
*Id.* at 188 (also noting that "abuse of discretion is not a uni-
form standard of review" and summarizing appellate reason-
ableness review following *Gall* and *Kimbrough*) (citing *Gall*,
128 S. Ct. at 591).

A brief review of the decisions in *Gall* and *Kimbrough*
illustrates how the Supreme Court has elaborated on reason-
ableness review following our decision in *Paul I. Gall* made
clear that the Guidelines were relevant throughout the entire
process, and any departure from them must be sufficiently
justified in light of § 3553(a) factors. 128 S. Ct. at 596-597.
The Court elaborated that the abuse of discretion review
should not resemble a *de novo* review, and that "the fact that
the appellate court might reasonably have concluded that a
different sentence was appropriate is insufficient to justify
reversal of the district court." *Id.* at 597; *see also id.* at 602.
*Gall* further clarified the role of the sentencing judge and
appellate court, noting that it is the sentencing court's position
to find facts and make credibility determinations. *Id.* at 597-
598.

In *Kimbrough*, the Court again emphasized the continuing
importance of the Guidelines and the function of the Sentenc-

ing Commission. *Kimbrough* reiterated *Gall*'s holding that any departure from the Guidelines must be justified by § 3553(a) factors, and took one step further in announcing that a departure is accorded most deference when the case is truly outside the "heartland" of the Guidelines, rather than based on a disagreement with the Guidelines, and hence, the Sentencing Commission's expertise. 128 S. Ct. at 574-575.

This court's *en banc* decision in *Carty* summarized sentencing law as outlined by the Supreme Court in *Rita*, *Gall*, and *Kimbrough. See United States v. Carty*, 520 F.3d 984 (9th Cir. 2008) (*en banc*). In outlining the process by which our appellate court reviews sentencing decisions, *Carty* relied upon, and heavily cited, all three cases. *Carty* also held that any prior cases were "overruled to the extent they are *inconsistent* with Rita, Gall, Kimbrough, or [Carty]." *Id.* at 990, n.5 (emphasis added). We cannot say that our disposition in *Paul I* was consistent with the Supreme Court's directives in *Gall* and *Kimbrough*. The majority should acknowledge that *Paul I* did not afford the proper deference to the district court's determination that a within-Guidelines sentence, fully supported by an analysis of the § 3553(a) factors, was appropriate, as required by *Gall* and *Kimbrough*. The majority should also acknowledge that our own disposition in *Paul I* did not comply with the requirements of *Gall* and *Kimbrough*: we did not properly acknowledge the district court's role in fact-finding and judging credibility, explain the weight that should be afforded to each of the mitigating factors, or justify our disagreement with the Guidelines in reference to applicable § 3553(a) factors. We cannot say that our mandate in *Paul I*, made without the benefit of the guidance provided by subsequent Supreme Court and Ninth Circuit *en banc* decisions, survived *Carty*, *Gall*, and *Kimbrough*.[8]

---

[8]The inconsistency of our disposition in *Paul I* with the directives of *Carty*, *Gall*, and *Kimbrough* is also illustrated by examining reasonableness review in our circuit following those decisions. Recent cases reviewing for reasonableness have heavily cited both *Gall* and *Kimbrough*, and

Finally, and in any event, I believe it is inappropriate to remand to a new judge for resentencing. The district court here followed the procedural directives of *Carty*. While ultimately concluding that some of the factors in *Paul I* were not mitigating, the district court carefully set forth its analysis of the issues. This is unlike *United States v. Ferguson*, 624 F.2d 81 (9th Cir. 1980), where remanding to a different judge was appropriate because the original judge refused to let the parties even present their mitigating evidence. The careful explanation put forth by the district court also counters any appearance of injustice in the sentencing.

Also unlike in *Ferguson*, where there was little waste and duplication in allowing a different judge to form a first impression evaluating the mitigating evidence as to why defendant's suspended sentence should not be completely reinstated, resentencing here would entail a significant waste of judicial resources already invested in this case. The district court judge has seen and heard the evidence presented at trial, made credibility determinations, has full knowledge of the facts, and has gained insight not conveyed by the record. *Gall*, 128 S.Ct. at 597. A new district court would receive a cold record, coupled with two mandates by this panel to mitigate Paul's sentence based on very specific but somewhat ambiguous factors. Such a result would be contrary to the "empower-[ment] of district courts, not appellate courts . . . to engage in individualized sentencing." *Whitehead*, 532 F.3d at 993. I dissent.

---

focused on whether the district court adequately explained the basis of its sentence, the basis was proper and tied to relevant § 3553(a) factors, and whether the court considered the defendant's arguments. *See, e.g.*, *United States v. Whitehead*, 532 F.3d 991 (9th Cir. 2008); *United States v. Warr*, 530 F.3d 1152 (9th Cir. 2008); *United States v. Shi*, 525 F.3d 709 (9th Cir. 2008); *United States v. Cherer*, 513 F.3d 1150 (9th Cir. 2008); *United States v. Autery*, 555 F.3d 864 (9th Cir. 2009).